[L. A. No. 26721. In Bank. July 19, 1962.]

SAN DIEGO PROFESSIONAL ASSOCIATION, Petitioner, v. THE SUPERIOR COURT OF SAN DIEGO COUNTY, Respondent; PADEREWSKI, MITCHELL, DEAN & ASSOCIATES, Real Party in Interest.

Hillyer, Crake & Irwin and Oscar F. Irwin for Petitioner.

No appearance for Respondent.

Kaminar, Sorbo, Andreen, Thorn & Gallagher and Francis E. Gallagher for Real Party in Interest.

PETERS, J.—Petitioner hired the real party in interest, a firm of architects, to prepare plans for and to supervise the construction of a medical office building on petitioner's real property. After completion of the building, the real party filed a mechanic's lien, and subsequently filed an action for foreclosure of that lien, alleging that $11,032.51 was still due for their services. Petitioner answered, and cross-complained, alleging two causes of action. The first was based on the claimed malpractice of plaintiff in improperly designing and planning the building. The second alleged breach of contract to perform the architectural services. In the course of preparing for trial, petitioner's attorney (representing defendant and cross-complainant) retained a firm of engineers to make a study of all the documents involved in the alleged deficiencies, and to analyze the same with reference to the portions of the building alleged to have been improperly designed or constructed. Upon completing such study, the engineers prepared and delivered a report of their findings to the attorney. While this report was in the hands of petitioner's attorney, the real party (as plaintiff and cross-defendant) filed a motion for an order requiring production, inspection and copying of "[a]ll reports of engineering or scientific experts which discuss alleged defects in the construction of the medical building . . . and in particular a one hundred

page report from a Los Angeles engineering firm including diagrams, photographs and mathematical computations discussing alleged defects in said building.'' Declarations were filed in support of and in opposition to the motion, and, after hearing, the trial court made a written order granting inspection with certain restrictions and limitations.[1] That order contained a recital of matters referred to as ''findings,'' which included: (1) the documents described in the motion were prepared by engineers, at the request of defendant's attorney, for the purpose of trial preparation and with the intent of using such engineers as expert witnesses; (2) the report was not a communication from defendant to its counsel, and by reason of such fact is not privileged;[2] (3) defendant did not consent to plaintiff's examination of the report;[3] (4) ''Defendants [sic] have no legal right to withhold said report . . . on the grounds that . . . [it] constitutes part of Defendants' [sic] counsel's work-papers;''[4] (5) defendant having expended more than $4,000 for the report, it is proper for the court to impose such terms in that regard as justice may require. The order provided, among other things, that: (1) defendant make the engineering report available to plaintiff for inspection, copying or photographing; (2) should defendant desire to take the depositions of plaintiff, its agents or representatives, and use the engineering report for that purpose, it might do so prior to delivering the report for inspection, but within a time limit set forth in the order; (3) plaintiff and cross-defendant pay to defendant and cross-complainant, for the use of the report, a sum of money to be determined by the court at time of trial.

Inasmuch as the case presented an important problem of first impression in the field of discovery, this court issued an alternative writ of prohibition to review the propriety of the trial court's order. In support of its position, petitioner

[1]The same order granted petitioner the right to file an amended cross-complaint adding the contractors as cross-defendants. This portion of the order is not material to the instant proceeding.

[2]Although denominated as a finding, this is both a finding and a conclusion of law.

[3]This finding was required to negative plaintiff's contention that it was entitled to inspection because defendant had promised to permit it.

[4]From this language it is not clear whether the court meant this to be a finding that the report was not work product, or intended that the facts supported the claim of work product, but that there had been a sufficient showing of facts to support an exercise of judicial discretion in allowing inspection.

makes the single contention that the report itself was and is privileged under the attorney-client privilege. It specifically concedes that the names of the engineers who prepared the report are discoverable, and that the real party would have the right to take the engineers' depositions. Thus, superficially, it appears that the sole issue involved is whether or not a report rendered under these circumstances is, as a matter of law, a confidential communication from client to attorney. But the arguments made in support of the claim of privilege (together with the fact that the trial court made a specific finding negativing the fact) indicate the further contention that discovery should be denied because the report is the work product of the attorney.

*The attorney-client privilege*:

The client did not directly order this report, because it was prepared by the expert at the request of, and delivered to, the attorney. This fact, however, as petitioner correctly argues, does not prevent application of the attorney-client privilege if the circumstances indicate that the expert was retained to examine the client or the client's confidential affairs for the purpose of discovering (and reporting to the attorney) technical data which the layman is incapable of discovering, or which the layman cannot express in the proper technical language. This problem was discussed in *Suezaki* v. *Superior Court* (*ante,* p. 166 [23 Cal.Rptr. 368, 373 P.2d 432]) and in *Oceanside Union School Dist.* v. *Superior Court* (*ante,* p. 180 [23 Cal.Rptr. 375, 373 P.2d 439]). But this principle of law is not necessarily here applicable. The burden of establishing that a particular matter is privileged is on the party asserting that privilege (*Chronicle Pub. Co.* v. *Superior Court,* 54 Cal.2d 548, 565 [7 Cal.Rptr. 109, 354 P.2d 637], and cases cited therein). In an attempt to sustain this burden the objecting party filed two declarations.

The first declaration, after briefly setting forth the issues of the case, stated: "In order to prepare for the trial of the above action it was, in the opinion of . . . [defendant's attorney] necessary to make a thorough study of all contract documents involved in connection with the above specified deficiencies and to have said documents analyzed with respect to the air conditioning system, roof structural support, roof drainage, etc., installed under the supervision of plaintiff.

That such analysis could be made in many respects by . . . [defendant's attorney] but to aid . . . [him] in properly preparing defendant and cross-complainant's case for trial . . . [he] went . . . to the City of Los Angeles and employed a certain engineering firm to aid . . . [him] in making such analysis. A report of such analysis was thereafter prepared and delivered to . . . [him] by said engineering firm . . . and said engineering report is presently in the hands of . . . [defendant's attorney]. . . .

". . . that said report is privileged communication [*sic*] and was specially prepared for the use of the attorneys for . . . [defendant and cross-complainant] does not constitute evidence, and that the privilege asserted in connection with the said communication has never been waived."

The second declaration, in connection with a denial that the report was ever promised to plaintiff, stated that: "Nothing was said in any manner of making the report available for inspection by . . . [plaintiff's attorney] and this could hardly be accomplished, since if the document were privileged as a matter of law, the privilege could only be waived by the clients of declarant, and declarant was hardly in any position to talk about inspection of something he had not seen himself.

". . . The experts were retained by declarant's law firm for purposes of interpretation to the attorneys for defendants of the physical and structural qualities of the building in question, the corporate owners of said building and its officers being unable to inform said attorneys of the actual physical difficulties with said structure or the causes thereof, and only able to inform the attorneys of their complaints as occupants of said building and of the building's tenants as to failure of certain features in the structure to work properly so far as the result intended to be obtained from said features. Because of the inability of the clients of the attorneys to so inform them as to the actual cause of the complaints being expressed, it was necessary for the attorneys to have the assistance of expert engineers to interpret said difficulties and render opinions as to the causes of the same. Said experts were employed after the filing of the within action for said purpose alone, and not to make any corrections in said structure or to cause corrections to be made therein by any third parties, but for the sole and only purpose of aiding the attorneys in preparation of the case for trial on behalf of the attorneys'

clients. The experts had no knowledge of said building or structure or the difficulties encountered therein, or of the within action, until requested . . . to make the necessary examination of documents, records and the physical structure and the properties thereof in order to communicate to the attorneys the actual difficulties or causes thereof with said building which the clients of the attorneys were themselves unable to inform attorneys, they lacking the necessary specialized knowledge to make the required examination and render an opinion on same.''

Petitioner contends that this showing is identical in all particulars with the showing made when a medical doctor is retained by an attorney to examine and report on the physical or mental condition of his client when such condition is at issue in a pending lawsuit, which report is, of course, privileged. It is true that the showing made is similar in that in the instant case the expert was retained for the purpose of rendering a report regarding issues presented in a pending lawsuit, and that while the client was able to report complaints to his attorneys, he lacked sufficient specialized knowledge to assess and report the true cause of his complaints. But there the similarity ends. ■■■ In the instant case one of the attorneys (notably the one who personally retained the experts) averred that he was able to make the required analysis, but that he desired the services of the engineers ''to aid . . . [him] in properly preparing . . . for trial.'' Of major importance, neither the client's body, mind, nor private and confidential papers were submitted to the engineers for examination and report. They were handed the ''contract documents.'' In other words, their primary duty was not to examine and assess the client's building, but to evaluate and report any errors found in certain architectural designs, building specifications and contracts, all of which were part of the documents which constituted the contract between the parties to the lawsuit. Such documents were not private to the client, but were equally available to both parties, both before and during the pendency of the action. These distinctions indicate that respondent court's finding to the effect that the communication was not privileged as a matter of fact, was based upon solid ground.

■■■ In *Suezaki, supra,* it was held that the attorney-client privilege is confined to those matters which can be said to emanate from the client, and thus does not cover material

obtained or gathered by an agent who was retained by the attorney for the purpose of trial preparation, unless that material was of such a nature that it could be deemed a "communication" from the client to the attorney. In *Oceanside, supra,* we extended that doctrine to include the mental calculations of the agent who has been retained as an expert witness employed to ascertain the fair market value of the adversary's real property. But in neither of those cases did we have occasion to pass upon the privilege nature of the report, itself. In the former case we were dealing with a request for inspection of a tangible object, and not of any report with which it may have been transmitted. In the latter case, interrogatories requesting certain information developed by the expert were addressed to the litigant, and the report by which that information was delivered to the attorney was not in question. In this case it must be determined whether or not the report, itself, comes within the attorney-client privilege.

Under the facts here involved, the report was not privileged. As pointed out in the *Oceanside* case, *supra,* the proper rule is, that if the facts and circumstances surrounding the creation of the agency indicate that the agent was retained to evaluate and pass on to the attorney matters which emanate in confidence from the client, both his opinions and his report are clothed with the privilege. But where, as here, the facts and circumstances indicate that the expert is to examine, evaluate, and subsequently to testify, as to matters which are not in the nature of a confidential communication from client to attorney, then the letter of transmittal (report) is not privileged simply because it is reduced to writing and delivered to an attorney.[5]

 Whether the facts of an individual case support a conclusion that an expert's report did or did not emanate from the client as a confidential communication to his attorney, is a question for the trial court in the first instance. Nothing in the discovery statutes or in the law of privilege authorizes a reviewing court to disturb such a finding if there is any substantial evidence to support it. Here the respondent court (following the suggestion made in *Greyhound Corp.* v.

---

[5]We have intentionally referred to "the facts and circumstances surrounding the creation of the agency" rather than to the subject matter of the report, in order to avoid any suggestion that it might be necessary for a party to divulge the contents of a report in order to sustain a claim of privilege.

*Superior Court,* 56 Cal.2d 355 [15 Cal.Rptr. 90, 364 P.2d 266]) has made a complete record of its findings and conclusions. In light of the evidence, the finding that the engineer's report was not a "communication" from defendant to its counsel is supported. In view of that finding, respondent properly concluded that the report was not privileged.

 Petitioner contends, however, that both *Grand Lake Drive In, Inc.* v. *Superior Court,* 179 Cal.App.2d 122 [3 Cal. Rptr. 621], and *Rust* v. *Roberts,* 171 Cal.App.2d 772 [341 P.2d 46], stand for the proposition that an expert witness's report is privileged per se, and that this court (in its opinion in *Greyhound, supra*) inferentially approved such holding. These contentions are erroneous. As has already been pointed out in the companion cases decided this day, *Grand Lake* held only that the attorney-client privilege, under the circumstances there existing, did not extend to prevent examination of the expert as to facts found by him. The opinion expressly refrained from making any determination in reference to the privileged character of the expert's report. The *Rust* case did hold that the report of an appraiser of real property is privileged. To that extent it is disapproved.

The contention that this court inferentially approved the rule of the *Rust* case is erroneous. No hearing was asked for in *Rust*. The quotation from *Greyhound* relied on by petitioner (*supra,* 56 Cal.2d 355, at p. 381) is to the effect that "[r]*egardless of the discoverability of the appraisers' reports,* their names and addresses were clearly discoverable by deposition, and should have been discoverable by interrogatory." (Emphasis added.) Petitioner contends that we were there inferentially approving the holding in the *Rust* case to the effect that the report itself was privileged. When the entire paragraph of which that sentence is part (pp. 380-382, incl.) is read, it will be noted that we approved no part of *Rust* v. *Roberts,* but cited that case as an example of a group of decisions which "combined to stultify the purposes of discovery." We were not then concerned with the privileged or nonprivileged character of a written report. For this reason the emphasized phrase was included in the opinion. Just as the District Court did in *Grand Lake,* we were there indicating our intentional failure to pass upon the discoverability of the written report.

Something should be said about one holding in *Mowry* v.

*Superior Court,* 202 Cal.App.2d 229 [20 Cal.Rptr. 698] (decided since briefs were filed herein). In *Oceanside Union School Dist.* v. *Superior Court, supra, ante,* p. 180, *Mowry* was cited with approval in reference to the point then under discussion. On the point here involved, the District Court did interpret existing law to compel the holding that an appraiser's written report was of itself privileged, even though the contents thereof were not. For reasons already stated that portion of the opinion holding that an expert's report is as a matter of law within the attorney-client privilege, regardless of the facts surrounding the expert's agency, or the source of his information, is disapproved.

*Work product*:

The report here involved was clearly the work product of petitioner's attorney. For the purpose of preparing for trial, the attorney gathered together the documents on which defendant's case was predicated, took them to the engineers, discussed the same with them, and purchased the evaluation and opinions of such experts regarding the alleged failure of the real party in interest to perform in a professional manner, or in accordance with its contract. It then became a question within the discretion of the trial court as to whether or not, under the facts, this "work product" should be protected. As already pointed out in *Suezaki* v. *Superior Court, supra, ante,* p. 166, and in *Oceanside Union School Dist.* v. *Superior Court, supra, ante,* p. 180, "work product" does not create an absolute privilege. "Work product" may be discoverable under such terms as equity and justice may require, or discovery may be prohibited if equity and justice require it. Here the respondent court concluded that the prima facie showing of good cause made by the real party was sufficient to outweigh any necessity of protecting the adversary's files from invasion. The burden of showing need for such protection is upon the party claiming such need. Petitioner simply proved that the material sought to be inspected was the end product of its attorney's efforts, but made no showing that it would be harmed by the disclosure. The respondent court specifically found that petitioner has "no legal right to withhold said report . . . on the grounds that . . . [it] constitutes part of [petitioner's] counsel's work-papers." Although somewhat ambiguous (see fn. 4), properly interpreted, that finding means that, while the report does represent work product, that fact alone does

not give petitioner a legal right to withhold the same. That finding is consistent with and supported by the facts and should be upheld. The very limitations placed by the court in the order authorizing inspection indicate that it viewed the report as a portion of petitioner's attorneys' trial preparation, and intended to give them such protection as justice might require. For this reason it placed time limitations on the inspection, provided for petitioner's use of the reports prior to delivery, and added a requirement that the real parties bear an equitable share of the costs of obtaining the report. The imposition of such limitations constitutes a proper exercise of the discretion intended by the various pertinent provisions of the discovery statutes. Under such circumstances the order of respondent court should not be disturbed.

The alternative writ of prohibition is discharged, and the petition for a peremptory writ is denied.

Gibson, C. J., Traynor, J., Schauer, J., McComb, J., and White, J., concurred.