[L. A. No. 26649. In Bank. July 19, 1962.]

OCEANSIDE UNION SCHOOL DISTRICT OF SAN DIEGO COUNTY et al., Petitioners, v. THE SUPERIOR COURT OF SAN DIEGO COUNTY, Respondent; BRIGHTER HOMES, INC., et al., Real Parties in Interest.

Henry A. Dietz, County Counsel, and James E. Miller, Deputy County Counsel, for Petitioners.

Alan M. Firestone, City Attorney (San Diego), William W. Coppinger, Deputy City Attorney, George C. Hadley, Charles E. Spencer, Jr., and Robert E. Reed as Amici Curiae on behalf of Petitioners.

No appearance for Respondent.

Roby F. Hayes for Real Parties in Interest.

PETERS, J.—Petitioner Oceanside Union School District[1] is the plaintiff and the real parties in interest are the defendants, in a proceeding in eminent domain pending in respondent court by which petitioner seeks to condemn certain parcels of land belonging to the various defendants. In preparation for trial defendants filed and served upon plaintiff written interrogatories calling for the names and addresses of each person who had rendered to plaintiff an opinion as to the market value of or severance damage to each individual parcel of land owned by defendants, together with their opinions, and the area contained in each parcel. No request was made for the written reports of the appraisers. Plaintiff answered all but the two interrogatories calling for the opinions of its appraisers as to market value and severance damage. As to these it filed objections supported with a memorandum of points and authorities. Defendants then filed their points and authorities in opposition to the objections. The matter was then heard by respondent court. No issue was raised as to the propriety of the manner in which the matter was presented below, or to the procedures which resulted in the order under review.[2]

---

[1]Although not a plaintiff in the original action, Elra G. Garrison (Deputy Superintendent of the school district) is joined as a petitioner herein. For convenience, however, petitioners will be referred to as petitioner in this opinion.

[2]Section 2030 of the Code of Civil Procedure provides for the filing and serving of, and reply to, interrogatories. Prior to 1961 the party

Plaintiff's objections, as well as its points and authorities, were limited to two grounds; *i.e.*, that the two interrogatories call for information protected by the privileges declared in subdivisions 2 and 5 of section 1881 of the Code of Civil Procedure, and that they are "calculated to annoy, embarrass and oppress the plaintiff and set at naught the considerable expenses of the plaintiff." In support of the first ground, plaintiff filed the declaration of its deputy superintendent in which declarant alleged that the appraisals were made under written contracts the primary and dominant purpose of which was to obtain the appraisers' opinions as to value and damages incident to condemnation, which opinions were to be transmitted to the county counsel, and which were so transmitted by the deputy superintendent, "in the strictest of confidence for the purpose of assisting our legal representatives in the event that it should be necessary to acquire said properties by litigation." Plaintiff also placed in evidence the contracts themselves, each of which contained the following paragraph:

"The Appraiser and the Governing Board of the School District understand and agree that the Report is being prepared for the purpose of the conduct of litigation by the County Counsel and that all parts thereof are to be treated as strictly confidential. The Appraiser shall take all necessary steps to insure that no member of his staff or organization divulges any information concerning the Report except to members of the Governing Board of the School District, its authorized representatives and County Counsel."

Some doubt was cast on both of these quoted matters by the testimony of the deputy superintendent given at the hearing.[3] During his examination (and particularly on cross-

---

on whom the same were served was required to either reply or to file objections and, in the latter event, to set the same for hearing. The 1961 amendment authorized a reply which included the statement of objections, thus placing the burden of setting the objections for hearing on the party who propounded the interrogatories (see *Greyhound Corp.* v. *Superior Court*, 56 Cal.2d 355 [15 Cal.Rptr. 90, 364 P.2d 266], fn. 6a at p. 379). Although the record does not indicate the date on which plaintiff filed its objections, and the resulting order was entered after the date of the amendment, the matter has been presented, both here and below, as if the procedure prior to the amendment was applicable.

For more complete discussion of the shift in burden created by such amendment, see *Coy* v. *Superior Court, post,* p. 210 [23 Cal.Rptr. 393, 373 P.2d 457], decided this day.

[3]Although the witness was not examined at this hearing, his testimony at a previous hearing in which the issues were identical, was deemed (by stipulation) to have been given herein, and was transcribed, read to the trial judge, and made a part of this record.

examination) the following facts were developed: that the contracts between the plaintiff and its appraisers were executed on November 1, 1960, and provided that reports should be rendered to plaintiff within 45 days (or by January 4, 1961); that the instant action was not commenced until April 11, 1961; that in the interim, between January 4th and April 11th, plaintiff used the appraisals in an effort to negotiate purchase of the properties, in an effort to avoid litigation; that such negotiation was carried on by the employees of the plaintiff, and not by its attorney; that the deputy superintendent delivered the original copy of each report to the county attorney, keeping a duplicate original of each for his own use; that his purpose in making such delivery was "for the County Counsel to use in case of litigation, and to advise the school district as to [a] course of procedure"; that the dominant purpose for the preparation of the appraisers' reports was "to determine the fair market value of the properties involved"; that before entering into the contracts, plaintiff anticipated negotiating with the property owners, but withheld such negotiations until the reports were received, because it "wanted professional help in determining the fair market price"; that its attitude at the time was that it would "rather buy without litigation," and to that end it entered into the contract with the appraisers "to assist the governing board in determining a fair market price"; that since the same reports required for the negotiations would be required for litigation, the witness was unable to state which was the dominant purpose of the appraisers' reports.

█ The trial court entered its order overruling petitioner's objections, and required it to answer the interrogatories. We issued an alternative writ of prohibition to review the propriety of that order. This was a proper use of that writ.[4]

[4]The prerogative writs have been used frequently to review interim orders in discovery cases (*Twin Lock, Inc.* v. *Superior Court*, 52 Cal.2d 754 [344 P.2d 788]; *Carlson* v. *Superior Court*, 56 Cal.2d 431 [15 Cal. Rptr. 32, 364 P.2d 308]; *Greyhound Corp.* v. *Superior Court, supra*, 56 Cal.2d 355). But this does not mean that these discretionary writs will or should issue as of course in all cases where this court may be of the opinion that the interim order of the trial court was erroneous. In most such cases, as is true of most other interim orders, the parties must be relegated to a review of the order on appeal from the final judgment. As inadequate as such review may be in some cases, the prerogative writs should only be used in discovery matters to review questions of first impression that are of general importance to the trial courts and to the

On the merits, the petition raises several issues. These are: (1) Does the information sought come within the protection of the provisions on privilege (Code Civ. Proc., § 1881, subds. 2 and 5)? (2) Should the respondent court have sustained the objections on the ground that the information sought was the "work product" of petitioner's attorney? (3) Must respondent's order be reversed because it failed to find facts or state reasons for its order? (4) Is respondent's order fatal because it failed to include any restriction or limitation on the disclosure? (5) Did respondent abuse its discretion because it made a contrary order in a similar proceeding?[5]

None of these contentions require a reversal or vacation of the order of which complaint is made.

*The opinions of the appraisers are not privileged*:

The information sought by the interrogatories is not privileged under the provisions of subdivision 5 of section 1881 of the Code of Civil Procedure. That subdivision reads:

"A public officer cannot be examined as to communications made to him in official confidence, when the public interest would suffer by the disclosure."

▮ Even if it be assumed, contrary to the later holding of this court on that issue, that the opinion here sought is a "communication" made in "confidence" to a public officer, it has not been shown that the public interest would suffer by the disclosure. This is necessary if the material is to be privileged under this section. ▮ The contracts, which petitioner offered in evidence below, call for the opinions of the appraisers "of the fair market value of the property." Whatever may have been petitioner's purpose in obtaining those opinions in the first instance, the subject matter of those opinions has now gone into litigation. Obviously, the appraisers' opinions of value can serve no purpose other than as evidence in that litigation. To hold that the public interest would suffer by disclosure at this time would be to distort the obvious purpose of that section. ▮ While it is true that petitioner might gain a tactical advantage at the trial

profession, and where general guidelines can be laid down for future cases. The present case falls within this category. It involves an issue of great importance that is present in practically all eminent domain cases. Guidelines established here will be of great benefit in many such cases. Therefore, it is a proper case for the use of the writ.

[5]The contentions stated above are also argued, in varying form, in two amicus curiae briefs which have been filed. They will be discussed at the appropriate points below.

if its adversaries are required to come into court without knowledge of the appraisers' valuation of their property, such an advantage is not to be equated with "public interest."[6] The purpose of the condemnation action (out of which this proceeding has arisen) is to determine the fair market value of the property. Assumedly, petitioner believes that its appraisers have arrived at a fair market value. If public interest, as the words are used in section 1881, would suffer by disclosure of the fair market value of the condemned property, then the statute on privilege would have to fall before the constitutional requirements that no private property be taken without due process of law. (See *People* v. *McShann*, 50 Cal.2d 802 [330 P.2d 33]; *Priestly* v. *Superior Court*, 50 Cal.2d 812 [330 P.2d 39]; and *People* v. *Kiihoa*, 53 Cal.2d 748 [3 Cal.Rptr. 1, 349 P.2d 673], in each of which it was held that the constitutional requirement of a fair trial overrides the privilege which the police might otherwise have in refusing to name their informers.)

The City of San Diego, as amicus curiae, argues on this point that disclosure of the appraisers' opinions would be tantamount to giving private persons information obtained by the school district at public expense in violation of the limitation against giving away public property. Obviously, such interpretation would also bar the agency from disclosing the appraisers' opinions at the time of trial. The only distinction between disclosure at trial and pretrial discovery is one of time. To hold that appraisers' opinions, purchased with public funds, may not be disclosed without "giving away public property" would prevent the basic use for which those opinions were purchased.

In support of its contention that the appraisers' opinions are privileged under subdivision 2 of section 1881 (the attorney-client privilege), petitioner calls attention to the testimony produced at the hearing below. It points out that although the appraisers were hired and submitted their reports prior to the filing of the complaint, they were retained for the purpose of anticipated litigation and with the specific intent that their reports be delivered to the attorney in confidence. As already pointed out, this testimony is subject to a contrary interpretation, in that the deputy superintendent

---

[6]It might be argued that one purpose of the discovery statutes is to avoid or minimize the effect of such tactical advantages. But, of course, if the matter is privileged it is nondiscoverable.

disclosed that the reports were also sought for the purpose of purchase of the lands by negotiation without recourse to litigation. But, in any event, this argument is unsound. It is based on the theory that the "dominant purpose" of obtaining the opinions of the appraisers was to secure a report which could be communicated to the attorney in confidence, and that this renders such opinions privileged. In *Suezaki* v. *Superior Court* (*ante*, p. 166 [23 Cal.Rptr. 368, 373 P.2d 432]) it was pointed out that the "dominant purpose" test, first laid down in this state in *Holm* v. *Superior Court*, 42 Cal.2d 500 [267 P.2d 1025, 268 P.2d 722], is used to determine the dominant purpose of a corporate employee in gathering information or material which was ultimately made the basis of a report to the corporation's attorney. In *Suezaki* it was held that this test has no application to an independent agent retained for the purpose of making a report. In such case the dominant purpose is already known, and the only factual question is whether, under the particular circumstances, that agent can be said to be transmitting a communication from the client to the attorney. In that case we also held that the taking and transmitting of moving picture films representing the activities of the adversary could not be classified as a "communication from the client." Thus the real question involved is whether the information gathered, and the opinions formed by an expert retained to prepare himself for giving testimony, constitute such a communication. ■ As is pointed out in the *Suezaki* opinion, there are certainly some instances where the expert's report does constitute a "communication" from client to attorney. Such is true where the expert is required to examine the client, his personal affairs or property, or his mental impressions, in order to evaluate and transmit the same in a manner in which the client is unable by reason of insufficient scientific or technical training. ■ But where, as here, the information that the expert is hired to assess (and on which he reports) does not emanate from the client, but from his adversary, that report cannot be said to be a "communication" from client to attorney as that phrase is used in the statute creating privilege. Logically, it cannot be held that material (including factual data and opinion) is privileged merely because it is the result of an expert's mental calculations, and was delivered to the attorney in confidence, in cases where the information on which it is predicated cannot be shown to have emanated from that attorney's client.

This problem is not a new one. A recent article appearing in the Stanford Law Review makes an exhaustive study of the question, and indicates that there are almost as many rules as there are jurisdictions which permit discovery.[7] The author observes (at p. 460) that: "[w]ithout special justification, communications of an expert ought not to be protected any more than communications of any other agent." He points up (at pp. 462 et seq.) the obvious distinction between reaching facts known to the expert by interrogation of him, as a witness, and reaching the same facts by recourse to his supposedly confidential report; and he deplores the fact that some jurisdictions have so overlooked this distinction that they have prohibited discovery of the adversary's expert's *knowledge* on the basis of the attorney-client privilege. At least as to the expert's testimony we have heretofore set the matter at rest insofar as California is concerned. In *People ex rel. Dept. of Public Works* v. *Donovan,* 57 Cal.2d 346, 354 et seq. [19 Cal.Rptr. 473, 369 P.2d 1], it was held that where the condemning authority failed to call its own appraiser at the trial of a condemnation action, defendant was entitled, in the face of an objection of privilege, to call that appraiser as a witness and elicit from him not only the facts which he had determined, but also his opinion as to value which he had transmitted to plaintiff's attorney in confidence. Thus, in California, it has already been determined that (at time of trial) the attorney-client privilege does not protect either the facts obtained or the mental opinions and calculations of that type of expert who, like a real estate appraiser, does not pass on to the attorney information which emanated "from the client." The distinction is based on the source of the expert's information, rather than on any intent or lack of intent to make the communication confidential. ▆ The real estate appraiser who obtains his information by viewing the adversary's property, by recourse to public records of permitted land use, and from comparable sales, is not transmitting a client's "confidence." If the expert is not transmitting the client's confidences, his communication cannot be protected by the provisions of a statute the sole purpose of which is to encourage a client to make full disclosure to his attorney without fear that others may be informed (*People ex rel. Dept. of Public Works* v. *Donovan, supra,* at p. 354).

[7] Friedenthal, *Discovery and Use of an Adverse Party's Expert Information* (1962) 14 Stan.L.Rev. 455.

Inasmuch as the privilege does not exist at time of trial it does not exist as to pretrial discovery. There is authority for this conclusion. In *Mowry* v. *Superior Court,* 202 Cal.App.2d 229 [20 Cal.Rptr. 698], the trial and appellate courts, on grounds not here involved, denied discovery of the mental calculations of real estate appraisers. In doing so, the appellate court advised the trial court that if a proper application was thereafter made (p. 241) the appraiser's "opinions and conclusions regarding the value of the lands and interest therein condemned, severance damages, special benefits, and the reasons for said opinions . . ." were not privileged and were discoverable either from the appraiser or the litigant. It was held that such conclusion was compelled by the *Greyhound* and *Donovan* cases, *supra,* and by the rules laid down in *Grand Lake Drive In, Inc.* v. *Superior Court,* 179 Cal.App.2d 122 [3 Cal.Rptr. 621]. The *Mowry* case also held that the appraiser's written report delivered to the attorney, as distinct from the information contained therein, is subject to the privilege. This problem is not here involved. Here only the opinions of the appraisers are involved, not their written reports.[8]

The Supreme Court of Wisconsin in *State* v. *Circuit Court for Waukesha County,* 15 Wis.2d 311 [112 N.W.2d 686], recently held that facts and opinions of the condemner's appraisers were not privileged under the attorney-client privilege under its statute (W.S.A. 325.22) which is substantially similar to subdivision 2 of section 1881 of the Code of Civil Procedure.

There, as here, the question of whether or not the written report of the appraiser was privileged was not involved. On the question of the pretrial discoverability of the facts and opinions of the appraiser the court used the following language (p. 689 [112 N.W.2d]):

"Relator's argument as applied to the present situation does not distinguish between compelling a witness to disclose

---

[8]The federal courts, even though bound by the rule of *Hickman* v. *Taylor,* 329 U.S. 495 [67 S.Ct. 385, 91 L.Ed. 451], require the parties in a condemnation action to disclose the subject matter of the appraiser's reports (rule 9, Local Rules of United States District Courts, Southern District of California). See also *Pre-Trial in Condemnation Cases; a New Approach,* by Judge Carter in Journal of the American Judicature Society (1956) vol. 40, no. 3, p. 78, written before the rule was formally adopted. See also, subdivision (11) of rule 4, Rules of the United States District Court, Northern District of California, effective July 16, 1962.

his knowledge or information of relevant facts and compelling him to disclose the fact of past communication of his knowledge or information or other matters to his attorney or the attorney of his principal. This distinction appears in simplest form in the proposition that a defendant in civil action may be compelled to testify to his own actions relevant to the cause of action, but neither he nor his attorney may be compelled to testify how the defendant described the same events to his attorney.

"Presumably . . . [the appraisers] examined the property involved, the general area in which it is located, and informed themselves as to sales and other factors which should, in their opinion, be considered in determining value before and after the taking. When they felt they had sufficient information they worked out opinions as to such values in the light of the experience and special knowledge which makes them experts, determining to their own satisfaction the weight which ought to be ascribed to various factors. They doubtless prepared and delivered to the commission or the attorney general reports stating or summarizing the information considered, their opinions of the values, and an explanation of the method used or theory followed. The principle for which relators contend might prevent compelling the experts, the attorney general, or the commission to produce these reports but not prevent compelling the expert to state the facts he observed, the information he obtained, his opinion as to values, and the explanation of the method he used."

This reasoning is sound.[9] In the instant case the factual data and the opinions of the experts were sought by interrogatories directed to the plaintiff. Plaintiff answered all but those interrogatories calling for opinion as to value, thus acknowledging that the attorney-client privilege does not protect the factual data collected. ▮▮▮ There is no distinction between the factual data gathered by an expert and the opinions which he forms by studying that data. If one is not privileged neither is the other. Where, as here, the factual data is unprivileged because it did not emanate from the client, then the opinion formed by the expert who gathered

---

[9]The statutory admonition against the adoption of any rule of privilege from another jurisdiction (Code Civ. Proc., § 2016, subd. (b)) does not preclude us from analyzing and accepting the reasoning of decisions from our sister states, particularly when that reasoning is applicable to existing California statutes. (See *City & County of San Francisco* v. *Superior Court*, 161 Cal.App.2d 653, 656-657 [327 P.2d 195].)

that data is similarly without privilege. As already pointed out, whether the actual written report, delivered to the attorney, may come within the privilege is not before us in this case. That point is discussed in *San Diego Professional Assn.* v. *Superior Court, post,* p. 194 [23 Cal.Rptr. 384, 373 P.2d 448], decided this day.

*The claim of "work product":*

Petitioner contends that the respondent erred in overruling its objections because the interrogatories call for its attorney's "work product." The objection filed below was not so phrased, but was based on annoyance, embarrassment and oppression. However, the point is not raised in the briefs, and we will treat the objection as if it were properly raised below.

 The claim of "work product" is not an absolute bar to discovery, but is a circumstance to be considered by the trial court in exercising its discretion (*Greyhound Corp.* v. *Superior Court, supra,* 56 Cal.2d 355; *Suezaki* v. *Superior Court, supra, ante,* p. 166). Even if it be conceded that, under the facts here involved, had the respondent court exercised its discretion by a denial of discovery, we would not have disturbed its order, it cannot be said that those facts required a denial as a matter of law. Petitioner argues that defendants had not, as yet, obtained appraisals of their own, and were thus attempting to utilize discovery of plaintiff's appraisals in lieu of expending their own time, effort and funds. This, it is contended, is the inequitable use of discovery by the "stupid or lazy" which was condemned in *Greyhound.* This is an important fact, but it is not conclusive. The trial court did not agree with such an interpretation of the facts. Defendants explained why they had not obtained appraisals at the time the matter was heard below. The trial court, in the exercise of its discretion, might have ordered the matter held in abeyance until such time as the parties were in a position to trade appraisals (as is done in the federal district courts). But it chose to accept defendants' arguments, and ordered plaintiff to disclose its appraisals at this time. From this fact, alone, we cannot say that the trial court failed to realize that discovery of appraisers' opinions is not a one-way street. So far as the record shows, this case is not yet ready for pretrial conference. There is yet plenty of time for petitioner to obtain the adversaries' appraisals by proper demand or motion. At the present time it cannot be

said that the failure to protect the appraisers' opinions as the work product of petitioner's attorney has resulted in injustice or inequity, or was an abuse of discretion on the part of the respondent court.

*Other contentions urged by respondent:*

The balance of petitioner's contentions require but brief consideration.[10]

 The claim that the order must be reversed for failure to state facts or make findings is founded on a distortion of certain language appearing in *Greyhound* (*supra,* 56 Cal.2d 355, at p. 384). Petitioner quotes that portion of a sentence where it was said that "a careful trial judge, faced with a questionable request for discovery, will find some way to let the record show the basis of his determination." While this is sound trial practice, the unquoted portion of the same sentence makes it clear that there is at present no legal requirement that the trial court make a record of its findings in a discovery procedure.

The contention that prohibition should issue because the respondent court failed to place any restriction or limitation in its order overruling the objections raises simply a question of discretion, a matter that has already been discussed.

The final contention is to the effect that there was an abuse of discretion because the respondent court had made a contrary order in a similar proceeding before it, shortly prior to the date of the order under review. From the record it appears that petitioner (also as plaintiff) had raised the same objections to identical interrogatories in another condemnation case involving other defendants (represented by the same counsel who represent the real parties in interest herein). The issues were so identical that the hearing on the objections in the instant matter was submitted on the transcript of testimony given at the previous hearing. In the first case the court sustained the objections. In the instant case the court (pre-

---

[10]In addition to the remaining contentions set forth by petitioner, the City of San Diego, as amicus curiae, advances several arguments based on statutory interpretation. From the fact that the Legislature rejected two proposed bills in 1959 (which bills are not set forth for our consideration) and adopted a third in 1961, all relating to condemnation cases, it infers a legislative intent to limit discovery in that field. The argument overlooks the fact that the 1961 Legislature also amended the discovery statutes without altering those provisions which make discovery available to any party in any action or special proceeding. It should also be mentioned that this contention of the amicus curiae was not presented to the trial court.

sided over by the same judge) overruled the objections, and required reply to the interrogatories. This is alleged to be an abuse of discretion. However, from the dates of the two orders, it appears that the order in the first case was entered prior to publication of *Greyhound* and its companion decisions, whereas the second case was decided after the trial court had the benefit of the guidance of those opinions. Even in the absence of such fact, there is no rule of law which requires a court to repeat what may have been an erroneous decision simply because it erred in a previous case in which the facts were identical.

The order of the respondent court was proper. The alternative writ of prohibition is discharged and the peremptory writ is denied.

Gibson, C. J., Traynor, J., McComb, J., and White, J., concurred.

Schauer, J., concurred in the judgment.