74 Cal.App.3d 47 (1977)
141 Cal. Rptr. 273
LA RONDA COLLINS et al., Petitioners,
v.
THE SUPERIOR COURT OF LOS ANGELES COUNTY, Respondent; LOS ANGELES COUNTY DEPARTMENT OF PUBLIC SOCIAL SERVICES, Real Party in Interest.
Docket No. 50499.
Court of Appeals of California, Second District, Division Five.
October 13, 1977.
*50 COUNSEL
Edith S. Newman for Petitioners.
Benson Schaffer and Kenneth A. Krekorian as Amici Curiae on behalf of Petitioners.
No appearance for Respondent.
John H. Larson, County Counsel, and Sterling R. Honea, Deputy County Counsel, for Real Party in Interest.
OPINION
ASHBY, J.
There is presently pending in respondent court a proceeding pursuant to former Welfare and Institutions Code section 600, subdivision (d),[1] to declare the infant Ajamu Swaggart a dependent of the juvenile court. Petitioners La Ronda Collins and Steven Swaggart are the indigent parents of the infant. That proceeding was initiated by the Department of Public Social Services with the juvenile court on behalf of the infant minor who was then three months old. It is alleged that baby Ajamu was hospitalized "as a result of physical abuse. Injuries resultant from that abuse are: numerous fractured ribs on both sides, bruised right scrotum and penis, hardening of right testicle, indicating further injury or old blood collected in the scrotum. Mother's explanation of how injuries occurred is not consistent [sic] with medical findings. Further x-rays also showed an old fracture at lower end of minor's tibia." Respondent appointed counsel for petitioners pursuant to former section 634 of the Welfare and Institutions Code.[2] Said counsel moved for appointment of a medical expert pursuant to sections 730 and 952[3] of the *51 Evidence Code. In support of this motion counsel submitted a declaration under penalty of perjury wherein she stated that petitioners had represented to her that they were financially unable to hire a medical expert to assist them in preparation of their defense, and that in order to represent petitioners effectively, counsel required the assistance of a medical expert to interpret real party in interest's medical evidence and to evaluate information which had been communicated to counsel by petitioners. Real party opposed petitioners' request, arguing that "if a court feels an expert is needed to render an opinion on a child's condition, that opinion should be made available to the court so that the court has the necessary facts to properly act for the protection of the child."
In an order dated February 1, 1977, the court ordered a medical doctor chosen by counsel for the mother "appointed to examine the medical records in this matter, to consult with counsel regarding said records, to prepare a written report and testify at the trial, if so requested, pursuant to Evidence Code 730." Respondent further ordered that a copy of the report submitted to counsel be forwarded to respondent and that counsel notify the county counsel of the name and address of the expert chosen.
Instead of designating a medical expert, petitioners brought the present proceeding. Because the petition raises an issue which recurs with some frequency in connection with dependency proceedings, we issued an alternative writ of mandate and set the matter for hearing.[4] We also stayed that portion of respondent's order which required transmittal of the expert's report to respondent court and stayed adjudication on the merits of the dependency proceeding.[5]
*52 (1) Counsel's declaration indicated the appointment was sought not only to interpret the medical records but also to evaluate information communicated to counsel by petitioners. The trial court declined to appoint the expert for the purpose of evaluating information communicated to counsel by petitioners. The court's refusal to appoint the expert for that purpose clearly implies a finding that for that purpose the appointment of an expert is unnecessary. This finding is supported by the record.[6] Petitioners made no showing whatsoever, other than the bare assertion, that an expert was needed to evaluate information communicated from petitioners. The court could reasonably conclude no expert was needed for this purpose. This is not a case where a doctor is going to conduct an examination of the client. There has been no showing that petitioners' explanation to their counsel as to how the child was injured is one that requires technical expertise to understand, nor does that appear from the nature of the case. It is within the trial court's discretion under section 730 to determine whether an expert is needed. (See People v. Vatelli, 15 Cal. App.3d 54, 61 [92 Cal. Rptr. 763].) We find no abuse of discretion.
(2) The purpose of these dependency proceedings is to protect and promote the welfare of the child, not to punish the parent. (See former Welf. & Inst. Code, § 502, now § 202; In re Robinson, 8 Cal. App.3d 783, 786 [87 Cal. Rptr. 678].)[7] In order to better effect this purpose, the Legislature provided in Welfare and Institutions Code section 701.7 that "[t]estimony by a parent, guardian, or other person who has the care or custody of the minor made the subject of a [dependency] proceeding ... shall not be admissible as evidence in any other action or proceeding."
(3a) Nevertheless, petitioners insist that the court's appointment of an expert be subject to the limitation that if they do not choose to call the expert as their witness, he may not be called as a witness by any party and his findings, opinions and report must remain confidential. This contention is without merit.
Essentially petitioners wish to expand the ruling in Torres v. Municipal Court, 50 Cal. App.3d 778 [123 Cal. Rptr. 553], and extend it to this civil *53 dependency proceeding. Torres has no application here. Torres was a criminal action in which the defendant was charged with being under the influence of a controlled substance. The defendant requested the assistance of an expert physician-psychiatrist on a confidential basis. The trial court denied that motion and appointed a doctor to "`determine if a narcotic substance had been introduced into defendant's body.'" (Id. at p. 781.) It was held that the trial court erred in failing to provide the examination to defendant on a confidential basis. The reason why confidentiality was held necessary in the circumstances of Torres was that the examination of defendant had no value apart from its dependence on confidential communications from the defendant to the doctor which bore directly on defendant's guilt of the criminal charge.
"`Due to the nature of the charge pending against petitioner and bearing in mind the evidence offered by the prosecution in such cases, an examination by Dr. Tweed which did not involve the taking of a history by the doctor or conversation with petitioner could be of little use, if any, to petitioner. Fourteen days elapsed between petitioner's arrest and his request for appointment of Dr. Tweed. Any residual symptoms of petitioner's having been under the influence of a narcotic at the time of his arrest would have been limited to marks on his person suggesting possible injection of a narcotic within a relatively short time prior thereto; such symptoms are not necessarily evidence of narcotic injection. Dr. Tweed could not reasonably be expected to "provide defendant the findings and opinions of an impartial and independent observer" as to such symptoms without inquiry into their cause, the kind of communication that bears directly upon the guilt or innocence of petitioner and of particular importance to petitioner's counsel in planning and managing his defense.'" (Id. at p. 782.)
No such situation is involved here. This is not a prosecution of the parents but a civil proceeding for the protection of the child. The expert is not going to examine petitioners but only the medical records already available. Permitting petitioners to prevent the court or real party from having access to the expert, by petitioners' electing not to call him as a witness, would permit petitioners to suppress information which should be available to the court in conforming to the purpose of the dependency proceedings.
Petitioners assert in support of an equal protection argument that if nonindigent parents privately retained an expert in these circumstances *54 they would have the right to prevent the expert from testifying if they decided not to call him as their own witness. Petitioners cite no authority to support this assertion, which clearly is erroneous. (4) The expert in this case was appointed to examine the infant's medical records and consult with counsel regarding those records. These medical records are not confidential communications from petitioners, and the expert's opinions and conclusions based on these records would not be protected by an attorney-client privilege even if the expert were privately retained. (Oceanside Union School Dist. v. Superior Court, 58 Cal.2d 180, 188-189 [23 Cal. Rptr. 375, 373 P.2d 439]; San Diego Professional Assn. v. Superior Court, 58 Cal.2d 194, 201-202 [23 Cal. Rptr. 384, 373 P.2d 448, 97 A.L.R.2d 761].) Any alleged attorney work-product privilege would not be absolute. (Code Civ. Proc., § 2016, subd. (b).) (5) Any claim of the privilege against self-incrimination would be inapplicable in light of Welfare and Institutions Code section 701.7, which provides that "[t]estimony by a parent, guardian, or other person who has the care or custody of the minor made the subject of a [dependency] proceeding ... shall not be admissible as evidence in any other action or proceeding." The clear legislative policy underlying section 701.7 is that all relevant evidence should be disclosed in proceedings of this nature in order to protect the paramount interest of the safety and welfare of the child.
Even assuming that confidential information were communicated from petitioners to the doctor and would fall within the attorney-client privilege,[8] that is no basis for suppressing the report, findings or evaluations which are not based on privileged communications. Nor would it prevent the expert from being called as a witness by the court or real party. Specific claims of privilege as to specific inquiries can be made at the appropriate time, but blanket suppression of all evidence the expert might offer is not appropriate. (See Pacific Auto. Ins. Co. v. Superior Court, 273 Cal. App.2d 61, 70 [77 Cal. Rptr. 836].)
*55 (3b) The trial court properly determined that petitioners made no showing why confidentiality was essential to the expert's examination of the medical evidence. The expert was properly appointed under Evidence Code section 730 as an expert whose report and testimony should be available to all parties. (See Torres v. Municipal Court, supra, 50 Cal. App.3d at p. 784; People v. Lines, 13 Cal.3d 500, 511, fn. 11 [119 Cal. Rptr. 225, 531 P.2d 793].)
The alternative writ is discharged and the petition for writ of mandate is denied.
Hastings, J., concurred.
STEPHENS, Acting P.J., Concurring and Dissenting.
The interests involved in a dependency proceeding  the right of a child to be free of parental abuse, the duty of the state to protect children from abuse, the right of a child to the care, custody and protection of its parents if they are not abusive, the right of nonabusive parents to the custody of their children  touch the very core of our society's structure and its value system. The particular issue involved in the present proceeding, however, is a very narrow one. That issue is simply this:
Whether indigent parents who demonstrate a need for a medical expert to assist them in the preparation of a defense in a child dependency proceeding have a right to preserve the confidentiality of communications between themselves, their counsel and a court-appointed medical expert to the same extent as nonindigent parents would have vis-a-vis a privately retained medical expert in a similar proceeding. I would hold that the equal protection clause of the Fourteenth Amendment to the United States Constitution compels an affirmative answer to this question.
This principle has already been established with respect to criminal prosecutions. (Torres v. Municipal Court (1975) 50 Cal. App.3d 778 [123 Cal. Rptr. 553].) Torres held that where a trial court, in the proper exercise of its discretion, determines that appointment of a medical expert pursuant to Evidence Code section 730 is necessary to effectuate a criminal defendant's right to the effective assistance of counsel, equal protection requires that the appointment be subject to the protections of Evidence Code section 952. The equal protection clause, of course, applies to civil as well as criminal proceedings. (See e.g., Castro v. State of California (1970) 2 Cal.3d 223 [85 Cal. Rptr. 20, 466 P.2d 244].)
*56 Although it has been held that parents do not have an automatic constitutional right to counsel in child dependency proceedings (In re Robinson (1970) 8 Cal. App.3d 783 [87 Cal. Rptr. 678]), it has also been held that parents do have a right to due process in such proceedings. (In re Neal D. (1972) 23 Cal. App.3d 1045, 1048 [100 Cal. Rptr. 706].) In reviewing California's discretionary statutory scheme for appointment of counsel in dependency proceedings, the United States Court of Appeals for the Ninth Circuit held: "... that due process requires the state to appoint counsel whenever an indigent parent, unable to present his or her case properly, faces a substantial possibility of the loss of custody or of prolonged separation from a child. [Fn. omitted.]" (Cleaver v. Wilcox, 499 F.2d 940, 945.)
In the present matter respondent, in the sound exercise of its discretion under former section 634 of the Welfare and Institutions Code, made a factual finding that petitioners needed counsel[1] and that counsel needed the assistance of a medical expert at least insofar as an analysis of the medical records was concerned. I regard these findings as tantamount to a ruling that under the facts of this case the effective assistance of counsel is necessary to afford petitioners due process. Equal protection therefore demands that the relationship between counsel, petitioners and the expert be cloaked with the same degree of confidentiality  no more and no less  as would apply to nonindigent parents who make use of the services of an expert whom they hire and pay themselves.
Where my brethren and I part company is that I believe that the nature of petitioners' request requires an examination of the extent to which confidentiality would apply in the instant case were petitioners not indigent. Counsel for petitioners has cited two distinct purposes which the medical expert will serve. First, she seeks to have the expert examine and evaluate the medical evidence which real party has gathered. Second, she seeks to have the expert evaluate and explain the medical significance of information which has been communicated to counsel by petitioners or which may be communicated to the expert by petitioners at counsel's behest. No lawyer-client privilege exists with respect to the expert's evaluation of the existing medical records since that information did not emanate from the client and is "equally available to both parties." (San Diego Professional Assn. v. Superior Court (1962) 58 Cal.2d 194, 201 [23 Cal. Rptr. 384, 373 P.2d 448, 97 A.L.R.2d 761].) That factual *57 data not being privileged, neither would any expert opinion based thereon be. (Oceanside Union School Dist. v. Superior Court (1962) 58 Cal.2d 180 [23 Cal. Rptr. 375, 373 P.2d 439].) Although the report of the expert based on his evaluation of the medical records would constitute attorney's work product, it would not be absolutely privileged as such, but would be discoverable in the sound discretion of respondent court. (San Diego Professional Assn. v. Superior Court, supra, 58 Cal.2d 194.)
A different situation exists, however, with respect to the consultations contemplated by counsel involving either her disclosure to the expert of confidential communications made to her by petitioners or discussion of communications made by petitioners to the expert in his capacity as medical interpreter for counsel. The lawyer-client privilege clearly does apply to such communications. (People v. Lines (1975) 13 Cal.3d 500, 509-510 [119 Cal. Rptr. 225, 531 P.2d 793]; Evid. Code, §§ 952, 954.) Furthermore, there being no statutory client-litigant exception to the attorney-client privilege, such as exists with respect to the physician-patient and psychotherapist-patient privileges (Evid. Code, §§ 996, 1016), the confidential communications between petitioners, their counsel and the medical expert would retain their confidentiality even though the pending litigation provides the basis for the consultation. (People v. Lines, supra, 13 Cal.3d at p. 511.)
Real party in interest does not claim in its written return in opposition to the petition that communications to the expert emanating from petitioners, directly or through counsel, are discoverable. Real party's argument is limited to whether the expert may be called as a witness, presumably by real party, and whether his professional opinion is privileged.[2]
The problem with respondent's order herein is that it does not describe the scope of the appointment under Evidence Code section 730 in sufficient detail to enable this court to determine whether the appointment is solely for the purpose of examining and reporting on the existing records or whether it extends to an evaluation of the medical significance, in the light of those records, of confidential communications *58 by petitioners. To the extent that the appointment falls within the more circumscribed first alternative, respondent did not abuse its discretion in ordering disclosure of the physician's identity and his prospective report. To the extent that the appointment of the expert encompasses consultations involving communications emanating from petitioners, there would exist a confidentiality and disclosure would be improper. If respondent court, upon further consideration of the distinction I have thus drawn, determined that it would be impractical, if not impossible, for a medical expert to compartmentalize his opinions so as to disclose only those portions which do not fall within the attorney-client privilege, respondent could  although it would not be obliged to do so  choose to appoint separate experts to fulfill the separate needs of counsel.
I would remand the cause for clarification of whether respondent has found that the appointment of a medical expert to evaluate the significance of petitioners' confidential communications to counsel is necessary to render counsel effective, and should this question be answered in the affirmative, for a protective order securing to petitioners their attorney-client privilege.
A petition for a rehearing was denied November 10, 1977, and the opinion was modified to read as printed above. Petitioners' application for a hearing by the Supreme Court was denied January 5, 1978.
NOTES
[1] Numerous sections of the Welfare and Institutions Code were renumbered by the 1976 session of the Legislature. The pertinent statute is present section 300 of the Welfare and Institutions Code. (Stats. 1976, ch. 1068.)
[2] Currently section 317. (Stats. 1976, ch. 1068.)
[3] Evidence Code section 730 reads as follows: "When it appears to the court, at any time before or during the trial of an action, that expert evidence is or may be required by the court or by any party to the action, the court on its own motion or on motion of any party may appoint one or more experts to investigate, to render a report as may be ordered by the court, and to testify as an expert at the trial of the action relative to the fact or matter as to which such expert evidence is or may be required. The court may fix the compensation for such services, if any, rendered by any person appointed under this section, in addition to any service as a witness, at such amount as seems reasonable to the court."

Evidence Code section 952 reads as follows: "As used in this article, `confidential communication between client and lawyer' means information transmitted between a client and his lawyer in the course of that relationship and in confidence by a means which, so far as the client is aware, discloses the information to no third persons other than those who are present to further the interest of the client in the consultation or those to whom disclosure is reasonably necessary for the transmission of the information or the accomplishment of the purpose for which the lawyer is consulted, and includes a legal opinion formed and the advice given by the lawyer in the course of that relationship."
[4] During the pendency of these proceedings the infant has been in the custody of a shelter care facility.
[5] We originally granted alternative writs in two other cases, both involving the issue before us now. The other matters became moot when the children died prior to the scheduled hearings.
[6] The dissent suggests that the court's order was ambiguous. Apparently petitioners did not find it to be. Petitioners did not request a clarification from the trial court. Petitioners did not argue in this court that the order was ambiguous.
[7] In In re Sherman M., 39 Cal. App.3d 40, 44 [113 Cal. Rptr. 847], involving Civil Code section 232 which also has as its purpose the protection of children, the court commented: "The purpose of the statute is to protect children, not to punish a criminal offender. The interest sought to be protected is that of the welfare of a child. Its need to be raised with love, emotional security and physical safety is paramount to any right of a neglectful parent to have the custody and physical proximity of its child."
[8] Although we need not decide the question here, respondent's brief suggests an interesting question concerning the duty of a medical expert to disclose information, otherwise confidential, where disclosure is necessary to avert death or extreme danger to a known potential victim such as an abused child. In this context, two Supreme Court decisions are noteworthy. Landeros v. Flood, 17 Cal.3d 399 [131 Cal. Rptr. 69, 551 P.2d 389], which held that a physician could be liable for malpractice for failure to diagnosis and report suspected child abuse, contains the following language: "`Experiences with the repetitive nature of injuries indicate that an adult who has once injured a child is likely to repeat.... [T]he child must be considered to be in grave danger unless his environment can be proved to be safe.'" (Id. at p. 412, fn. 9.)

In Tarasoff v. Regents of University of California, 17 Cal.3d 425, at page 442 [131 Cal. Rptr. 14, 551 P.2d 334], the Supreme Court held that "the confidential character of patient-psychotherapist communications must yield to the extent to which disclosure is essential to avert danger to others."
[1] Therefore, there is no need to consider whether petitioners had an automatic statutory right to counsel under former section 634.5 of the Welfare and Institutions Code. (Currently Stats. 1976, ch. 1068, § 318.)
[2] In all fairness to real party I would point out that, as the majority notes, this is the third such proceeding in which we issued an alternative writ, that real party filed a lengthy written return to the first two petitions, that the written return to this petition, which is considerably shorter, makes liberal reference to the earlier ones, but that in the earlier proceeding no claim was made that the expert would be used for any purpose other than evaluating existing records.