STEPHENS, Acting P. J., Concurring and Dissenting
The interests involved in a dependency proceeding—the right of a child to be free of parental abuse, the duty of the state to protect children from abuse, the right of a child to the care, custody and protection of its parents if they are not abusive, the right of nonabusive parents to the custody of their children—touch the veiy core of our society’s structure and its value system. The particular issue involved in the present proceeding, however, is a very narrow one. That issue is simply this:
Whether indigent parents who demonstrate a need for a medical expert to assist them in the preparation of a defense in a child dependency proceeding have a right to preserve the confidentiality of communications between themselves, their counsel and a court-appointed medical expert to the same extent as nonindigent parents would have vis-a-vis a privately retained medical expert in a similar proceeding. I would hold that the equal protection clause of the Fourteenth Amendment to the United States Constitution compels an affirmative answer to this question.
This principle has already been established with respect to criminal prosecutions. (Torres v. Municipal Court (1975) 50 Cal.App.3d 778 [123 Cal.Rptr. 553].) Torres held that where a trial court, in the proper exercise of its discretion, determines that appointment of a medical expert pursuant to Evidence Code section 730 is necessary to effectuate a criminal defendant’s right to the effective assistance of counsel, equal protection requires that the appointment be subject to the protections of Evidence Code section 952. The equal protection clause, of course, applies to civil as well as criminal proceedings. (See e.g., Castro v. State of California (1970) 2 Cal.3d 223 [85 Cal.Rptr. 20, 466 P.2d 244].)
*56 Although it has been held that parents do not have an automatic constitutional right to counsel in child dependency proceedings (In re Robinson (1970) 8 Cal.App.3d 783 [87 Cal.Rptr. 678]), it has also been held that parents do have a right to due process in such proceedings. (In re Neal D. (1972) 23 Cal.App.3d 1045, 1048 [100 Cal.Rptr. 706].) In reviewing California’s discretionary statutory scheme for appointment of counsel in dependency proceedings, the United States Court of Appeals for the Ninth Circuit held: “. . . that due process requires the state to appoint counsel whenever an indigent parent, unable to present his or her case properly,, faces a substantial possibility of the loss of custody or of prolonged separation from a child. [Fn. omitted.]” (Cleaver v. Wilcox, 499 F.2d 940, 945.)
In the present matter respondent, in the sound exercise of its discretion under former section 634 of the Welfare and Institutions Code, made a factual finding that petitioners needed counsel[1] and that counsel needed the assistance of a medical expert at least insofar as an analysis of the medical records was concerned. I regard these findings as tantamount to a ruling that under the facts of this case the effective assistance of counsel is necessary to afford petitioners due process. Equal protection therefore demands that the relationship between counsel, petitioners and the expert be cloaked with the same degree of confidentiality—no more and no less—as would apply to nonindigent parents who make use of the services of an expert whom they hire and pay themselves.
Where my brethren and I part company is that I believe that the nature of petitioners’ request requires an examination of the extent to which confidentiality would apply in the instant case were petitioners not indigent. Counsel for petitioners has cited two distinct purposes which the medical expert will serve. First, she seeks to have the expert examine and evaluate the medical evidence which real party has gathered. Second, she seeks to have the expert evaluate and explain the medical significance of information which has been communicated to counsel by petitioners or which may be communicated to the expert by petitioners at counsel’s behest. No lawyer-client privilege exists with respect to the. expert’s evaluation of the existing medical records since that information did not emanate from the client and is “equally available to both parties.” (San Diego Professional Assn. v. Superior Court (1962) 58 Cal.2d 194, 201 [23 Cal.Rptr. 384, 373 P.2d 448, 97 A.L.R.2d 761].) That factual *57 data not being privileged, neither would any expert opinion based thereon be. (Oceanside Union School Dist. v. Superior Court (1962) 58 Cal.2d 180 [23 Cal.Rptr. 375, 373 P:2d 439].) Although the report of the expert based on his evaluation of the medical records would constitute attorney’s work product, it would not be absolutely privileged as such, but would be discoverable in the sound discretion of respondent court. (San Diego Professional Assn. v. Superior Court, supra, 58 Cal.2d 194.)
A different situation exists, however, with respect to the consultations contemplated by counsel involving either her disclosure to the expert of confidential communications made to her by petitioners of discussion of communications made by petitioners to the expert in his capacity as medical interpreter for counsel. The lawyer-client privilege clearly does apply to such communications. (People v. Lines (1975) 13 Cal.3d 500, 509-510 [119 Cal.Rptr. 225, 531 P.2d 793]; Evid. Code, §§ 952, 954.) Furthermore, there being no statutory client-litigant exception to the attorney-client privilege, such as exists with respect to the physician-patient and psychotherapist-patient privileges (Evid. Code, §§ 996, 1016), the confidential communications between petitioners, their counsel and the medical expert would retain their confidentiality even though the pending litigation provides the basis for the consultation. (People v. Lines, supra, 13 Cal.3d at p. 511.)
Real party in interest does not claim in its written return in opposition to the petition that communications to the expert emanating from petitioners, directly or through counsel, are discoverable. Real party’s argument is limited to whether the expert may be called as a witness, presumably by real party, and whether his professional opinion is privileged.[2]
The problem with respondent’s order herein is that it does not describe the scope of the appointment under Evidence Code section 730 in sufficient detail to enable this court to determine whether the appointment is solely for the purpose of examining and reporting on the existing records or whether it extends to an evaluation of the medical significance, in the light of those records, of confidential communications *58 by petitioners. To the extent that the appointment falls within the more circumscribed first alternative, respondent did not abuse its discretion in ordering disclosure of the physician’s identity and his prospective report. To the extent that the appointment of the expert encompasses consultations involving communications emanating from petitioners, there would exist a confidentiality and disclosure would be improper. If respondent court, upon further consideration of the distinction I have thus drawn, determined that it would be impractical, if not impossible, for a medical expert to compartmentalize his opinions so as to disclose only those portions which do not fall within the attorney-client privilege, respondent could—although it would not be obliged to do so—choose to appoint separate experts to fulfill the separate needs of counsel.
I would remand the cause for clarification of whether respondent, has found that the appointment of a medical expert to evaluate the significance of petitioners’ confidential communications to counsel is necessary to render counsel effective, and should this question be answered in the affirmative, for a protective order securing to petitioners their attorney-client privilege.
A petition for a rehearing was denied November 10, 1977, and the opinion was modified to read as printed above. Petitioners’ application for a hearing by the Supreme Court was denied Januaiy 5, 1978.

 Therefore, there is no need to consider whether petitioners had an automatic statutory right to counsel under former section 634.5 of the Welfare and Institutions Code. (Currently Stats. 1976, ch\ 1068, § 318.)

In all fairness to real party I would point out that, as the majority notes, this is the third such proceeding in which we issued an alternative writ, that real party filed a lengthy written return to the first two petitions, that the written return to this petition, which is considerably shorter, makes liberdl reference to the earlier ones, but that in the earlier proceeding no claim was made that the expert would be used for any purpose other than evaluating existing records.