[Civ. No. 19844. First Dist., Div. One. June 22, 1961.]

SAFEWAY STORES, INC. (a Corporation), Petitioner, v. THE SUPERIOR COURT OF ALAMEDA COUNTY, Respondent; IVA BURROUS, Real Party in Interest.

Weinmann, Rode, Burnhill & Moffitt and Cyril Viadro for Petitioner.

No appearance for Respondent.

Smith, Parrish, Paduck & Clancy and Robert H. Laws, Jr., for Real Party in Interest.

TOBRINER, J.—■■■ While a motion for an order for inspection of an accident report may be defeated upon the ground that the dominant purpose of the report is for transmittal to an attorney in the course of professional employment, the party invoking the privilege bears the burden of making such a showing. The nature and purpose of the report comprises a factual issue which must be resolved by the trial court. Here, as we shall point out, the trial court did not abuse its discretion in refusing to find such privilege upon a presentation that was partial and incomplete.

The instant motion for an inspection of an accident report and the parrying claim of privilege arise out of the personal injury claim of Burrous, plaintiff below and real party in interest. Burrous asserts that while shopping in one of petitioner's stores she tripped over a basket in the aisle. Shortly after the accident, Rowley, the store manager, filled out and signed a form report as to the accident. The report contained the "name of the person" claiming to have incurred the mishap and "the details of the accident. . . ." Rowley transmitted the report "in the mailbag, to the accounting office."

In an affidavit submitted in opposition to the motion, Cambridge, the Zone Supervisor of petitioner Safeway Stores, Inc. states that it procured Rowley's report pursuant to its agreement with its insurer to cooperate in the conduct of suits and to provide it with "written notice" of the accident containing "all reasonably obtainable information respecting the time and place and circumstances of the accident, the names and addresses of the injured and available witnesses." Petitioner obtained the report "for the purpose of transmitting said information" to the insurance company, "to be transmitted" to its attorneys. "[F]rom experience said Safeway Stores, Inc. has learned that each accident occurring on the premises

of its stores . . . may potentially involve said Safeway Stores, Inc. in litigation, for which reason said Safeway Stores, Inc. in its investigation of accidents including the accident reports submitted by employees is motivated primarily by its desire to properly prepare a defense of possible litigation.''

As we have said, Rowley stated in his deposition that his report ''goes in, in the mailbag, to the accounting office.'' Neither Rowley's deposition nor Cambridge's affidavit describes the role of the accounting office as to the report. Nor does Burrous offer any explanation of the function of that office; Burrous merely states in her notice of motion that the document is not privileged.

The disposition of the case involves the impact of the attorney-client privilege upon Burrous' asserted right to discovery. The discovery provision, section 2031, subdivision (a), of the Code of Civil Procedure states that the court may order a party to produce the recited documents which are ''not privileged'' and ''which constitute or contain evidence relating to any of the matters within the scope of the examination permitted by subdivision (b) of Section 2016 of this code. . . .'' Section 2016, subdivision (b), of the Code of Civil Procedure specifies that ''[t]his article shall not be construed to change the law of this State with respect to the existence of any privilege, whether provided for by statute or judicial decision. . . .'' The relevant statute as to privilege, section 1881, subdivision 2, of the Code of Civil Procedure, provides: ''An attorney cannot, without the consent of his client, be examined as to any communication made by the client to him, or his advice given thereon in the course of professional employment; nor can an attorney's secretary, stenographer, or clerk be examined, without the consent of his employer, concerning any fact the knowledge of which has been acquired in such capacity.''

The parties urge contradictory positions as to the showing in regard to the application of the privilege. Petitioner argues that the sole evidence as to the purpose of the report consists of the affidavit of Cambridge, which avers that the dominant purpose of the report was for transmittal to an attorney in the course of professional employment for use in anticipated litigation. Burrous counters that Rowley's dispatch of the report to the accounting department raises a factual question as to its purpose; that the trial court decided, as a fact, that the dominant purpose in making the report did not relate to

its use in anticipated future litigation and that therefore petitioner shows no abuse of discretion.

 We shall point out that, although petitioner bore the burden of establishing the privilege, it submitted an incomplete affidavit, which, in view of the disclosures of the deposition, did not adduce an explanation of all of the prime facts to the trial court; that the trial court, charged with the obligation of the factual determination of the dominant purpose of the report, did not abuse its discretion in the absence of such adequate showing, and that the cases cited by petitioner do not hold to the contrary.

There can be no question but that the original determination of the nature of the purpose of the report rests with the trial court. Thus the court in *Holm* v. *Superior Court* (1954), 42 Cal.2d 500 [267 P.2d 1025, 268 P.2d 722], states: "In any given situation it is necessary that a determination be made concerning the facts asserted as a basis for the privilege. This determination is for the trial court in the first instance. . . . If it appears that the communication is to serve a dual purpose, one for transmittal to an attorney 'in the course of professional employment' and one not related to that purpose, the question presented to the trial court is as to which purpose predominates." (P. 507.) (To the same effect, *Jessup* v. *Superior Court* (1957), 151 Cal.App.2d 102 [311 P.2d 177].) Likewise, the rule that the party claiming the privilege bears the burden of establishing it has been stated many times. Justice Carter in his dissenting opinion in *Holm* v. *Superior Court, supra,* 42 Cal.2d 500, fully sets forth the cases, stating: "It is a settled rule that the one claiming the privilege has the burden of establishing the facts as a basis for its application [citations]." (P. 514.)

 The trial court here concluded that petitioner did not sustain this burden. While the Cambridge affidavit alleges that a contract of insurance required petitioner to submit accident reports to the insurance company, the affidavit alleges neither that the contract existed at the date of the accident nor at the time of the execution of the report. The deposition of Rowley stated that the report was directed to the accounting office but did not describe what the accounting office did with it.

The transmission of the report to the accounting office at least raises a question as to petitioner's purpose in so doing. Yet the affidavit gives no explanation; it offers, instead, a conclusion; Safeway is "motivated primarily by its desire to

properly prepare a defense of possible litigation.'' The channeling of the report to the accounting office may have been for the purpose of compiling accident reports; it may have been *pro forma* only or it may have been of such a nature as to destroy the privilege. Yet petitioner, not Burrous, was in a position to submit the full facts, and petitioner bore the burden of presenting them. Faced only with petitioner's conclusion and its lack of any explanation as to the role of the accounting department, the trial court did not convert its ignorance into a conclusion that the ''dominant purpose'' was ''for transmittal to an attorney 'in the course of professional employment.' '' (*Holm* v. *Superior Court, supra,* 42 Cal.2d 500, 507.) We cannot say that the trial court thereby abused its discretion.

The utterance of the verbal formula that the primary motivation of the report is to prepare a defense for possible litigation does not perfunctorily raise the privilege; the privilege must rest upon a factual showing. That showing becomes imperative when the journeying report passes through the accounting office, to an insurance company, and only ultimately to the attorneys for the insurance company. If the privilege can be asserted merely by the easy and inadequate incantation of self-serving conclusionary words, the discovery procedures can be partially nullified. As Witkin suggests, ''A formidable barrier to liberal discovery practice is the invocation by the witness or adverse party of basic privileges against disclosure of communications, facts or records.'' (Witkin, California Evidence, § 551, p. 599.)

The decisions do not support petitioner's proposition that it is entitled to its order despite the contrary finding of the trial court. The leading case of *Holm* v. *Superior Court, supra,* 42 Cal.2d 500, did not involve the exact question which presses here: the transmission of the report to another destination than the attorney. There the city's municipal railway employee gave a written report of an accident ''to the city setting forth his version of the accident. . . .'' (P. 504.) ''[T]he documents involved were recorded and preserved in the 'regular course of business of defendants in the operation of the Municipal Railway.' '' (P. 504.) The deputy city attorney and the general claims agent for the municipal railway attested that the ''questioned documents had been kept in confidence in the possession or control of one of them since they were made. . . .'' (Pp. 504-505.) Thus the only assertion that the documents were not privileged lay in the contention that

they had been "prepared" "in the 'regular course of business. . . .' " (P. 504.) The court held that this did not suffice to destroy the privilege. (See (1954) 1 U.C.L.A. L.Rev. 605; (1958) 10 Stanford L.Rev. 303.) In our case the showing of transmission to the accounting office raises an unanswered question as to the fate of the reports there; no such situation arose in *Holm.*

Indeed, the later case of *Union Oil Co.* v. *Superior Court* (1957), 151 Cal.App.2d 286 [311 P.2d 640], distinguishes *Holm.* There the appellate court sustained the trial court in ordering inspection of written statements obtained from employees and independent witnesses despite the defense that the statements were procured for "the purpose of allowing the petitioner to be prepared to defend itself against a claim for damages. . . ." (P. 290.) The court pointed out that the reports were compiled pursuant to a petroleum safety order and that as a consequence the dominant purpose did not relate to the preparation for litigation. In distinguishing *Holm* the court sets forth: "In the instant matter the problem of dual purpose was squarely presented to the trial court by the affidavits, as the plaintiffs' affidavit alleged, and it was uncontradicted by the petitioner's affidavits, that the written statements were prepared as reports of an accident pursuant to the petroleum safety order. Whereas the petitioner's counteraffidavits alleged that the statements were prepared for its attorney, the affidavits do not allege that the statements were prepared solely for that purpose." (P. 291.)

*Heffron* v. *Los Angeles Transit Lines* (1959), 170 Cal.App. 2d 709 [339 P.2d 567], upholds the application of the privilege to " 'a report or other communication made by an insured to his liability insurance company, concerning an event which may be made the basis of a claim against him covered by the policy. . . .' " (P. 718.) It did not, however, involve a report sent to a separate destination for an undisclosed purpose. There "the bus driver made his report of the accident in triplicate. Two copies of the report went to respondent's statistical department, and were destroyed after statistical data were taken therefrom. The third copy went to the attorneys for respondent's insurance carrier . . . for use in preparing for the defense of litigation pending or in prospect." (P. 717.) Thus, the company explains that it used the involved reports for "statistical data"; in the instant case the report departs to the accounting department and into the limbo of the unexplained.

Finally, *Jessup* v. *Superior Court, supra,* 151 Cal.App.2d 102, involved a situation in which the petitioner fully disclosed the purposes and uses of the reports as to an accidental swimming pool death. The reports were delivered to the city manager and the city attorney. The city manager testified that "One of the reasons for the reports is to determine methods by which the recurrence of similar accidents can be prevented." (P. 106.) The court held that the additional use of the reports "for accident prevention purposes" (p. 107) did not defeat the fact that the "dominant cause" was for "defense of possible litigation." (P. 111.) In the instant case all the facts as to the uses and purposes of the report were not adduced for the court's determination; whether or not the transmittal of the report to the accounting department was for accident prevention, we do not know.

While petitioner may have been able to establish the privilege here by a more complete showing, it presented to the trial court only an allegation of an insurance contract which may or may not have been effective at the crucial times, and a conclusion that the dominant purpose of the report was for transmission to the insurance company's attorneys, without any explanation of the reason for the dispatch of the report to the accounting office or any exposition of its role in this regard. Petitioner presented the trial court with a dangling query and the court did not attempt an uninformed resolution.

We deny the petition for a writ of prohibition or writ of mandate or other writ. The alternative writ of prohibition is discharged.

Bray, P. J., and Duniway, J., concurred.