[Civ. No. 21468. First Dist., Div. One. Nov. 23, 1964.]

THE PEOPLE ex rel. DEPARTMENT OF PUBLIC WORKS, Plaintiff and Respondent, v. GLEN ARMS ESTATE, INC., Defendant and Appellant.

842

844

Breed, Robinson & Stewart, Ned Robinson and James R. McCall for Defendant and Appellant.

Harry S. Fenton, Holloway Jones, Jack M. Howard, John D. Rogers, Richard S. Levenberg and William R. Edgar for Plaintiff and Respondent.

SULLIVAN, P. J.—In this eminent domain proceeding brought to acquire certain real property for state highway purposes, defendant owner appeals from a judgment entered upon a jury verdict awarding compensation in the sum of $55,000 together with severance damages in the sum of $2,500. We are called upon to determine two questions: (1) Whether the trial court erred in excluding from evidence the appraisal report of the state's employee Nowicki on the ground that it was protected by the attorney-client privilege; and (2) whether the court erred in excluding from evidence certain statements of the state's employee Schlarmann made in the course of certain settlement negotiations but claimed to be admissions independent of any offer in compromise. As we shall hereafter explain, we have concluded that the ruling of the learned trial judge was correct in each instance and that the judgment should be affirmed.

We set forth the pertinent facts. On the second day of the trial in proceedings outside the presence of the jury, defendant's counsel made known to the court his intention to call plaintiff's appraiser Nowicki as a witness and to offer in evidence a certain appraisal report prepared by the latter. Plaintiff's counsel thereupon asserted the attorney-client privilege but suggested to the court that the appraisal report be submitted by plaintiff to the court *in camera* without waiving any matter of confidentiality insofar as its contents were concerned. [1] The record discloses that neither defendant nor

---

[1] In the brief of plaintiff and respondent on file herein it is stated that ''[r]espondent's counsel asserted the attorney-client privilege.'' That part of the record to which we are referred as supportive of the statement (Cal. Rules of Court, Rule 15(a)) discloses that plaintiff's counsel merely stated that ''the plaintiff here asserts the privilege''

its counsel had ever seen the report either through discovery procedures or otherwise.

Plaintiff, in order to meet its burden of establishing that the particular matters were privileged (see *Tanzola* v. *De Rita*

without indicating what privilege was being asserted. We shall therefore treat the assertion made at this point of the proceedings as that of the attorney-client privilege. (Code Civ. Proc. § 1881, subd. 2.) However, we observe that during the ensuing interrogation of Nowicki and the subsequent argument of counsel, the record indicates an attempt by plaintiff's counsel also to assert the public-official privilege (Code Civ. Proc. § 1881, subd. 5). As we note *infra*, plaintiff asserts both privileges on this appeal.

Under the circumstances we comment briefly on the *in camera* inspection procedure which plaintiff's counsel suggested to the trial judge. When the asserted privilege is that applying to state secrets (see *United States* v. *Burr* (Va. 1807) 25 F.Cas. 30, F.Cas. No. 14692d; *United States* v. *Reynolds* (1953) 345 U.S. 1, 7 [73 S.Ct. 528, 97 L.Ed. 727, 732-733, 32 A.L.R.2d 382, 388]; 8 Wigmore on Evidence (McNaughton Rev. 1961) § 2378, p. 792) or to official communications (Code Civ. Proc., § 1881, subd. 5), the government may often be required to disclose the material which is claimed to be privileged to the judge for perusal *in camera* in bearing the burden of persuading the judge that disclosure would be harmful to the government. (*Halpern* v. *United States* (2d Cir. 1958) 258 F.2d 36, 44; *Mitchell* v. *Bass* (8th Cir. 1958) 252 F.2d 513, 517; *Cresmer* v. *United States* (D.C.N.Y. 1949) 9 F.R.D. 203, 204; *United States* v. *Cotton Valley Operators Committee* (D.C.La. 1949) 9 F.R.D. 719, 720-721, affd. by divided court (1950) 339 U.S. 940 [70 S.Ct. 793, 94 L.Ed. 1356]; 8 Wigmore, *op. cit.*, § 2379, pp. 810-812.) When the privilege of official communications is claimed as a ground for excluding a document from evidence the question for the trial judge is whether the public interest will suffer. (Cf. *Jessup* v. *Superior Court* (1957) 151 Cal.App.2d 102, 108 [311 P.2d 177]; *People* v. *Curry* (1950) 97 Cal.App.2d 537, 548 [218 P.2d 153] (overruled on other grounds in *People* v. *McCaughan* (1957) 49 Cal.2d 409, 420 [317 P.2d 974]); see also *People* v. *Denne* (1956) 141 Cal.App.2d 499, 512 [297 P.2d 451].) It was not inappropriate in the instant case, therefore, for plaintiff's counsel Mr. Rogers to offer the report to the court for examination *in camera* if he was claiming that the report was privileged as an official document under the provisions of Code Civ. Proc. § 1881, subd. 5.

However, when the sole privilege being claimed is that of a communication between attorney and client it is not usually customary or necessary for the court to examine the allegedly privileged document itself, since the factual determination by the court does not involve the nature of the contents of the document and the effect of their disclosure but, rather, it involves the existence of the relationship at the time of the communication, the intent of the client, and whether the communication emanates from the client. See, for example, *San Diego Professional Assn.* v. *Superior Court, supra,* 58 Cal.2d 194, 202, fn. 5, where the court, in the course of deciding whether or not a report was a confidential communication, made clear that it desired ''to avoid any suggestion that it might be necessary for a party to divulge the contents of a report in order to sustain a claim of privilege.'' (For examples of cases holding that the contents of the documents or communications themselves need not be disclosed in order to prove the claimed privilege see *Ex parte Niday* (1908) 15 Idaho 559 [98 P. 845, 846]; *Bujac* v. *Wilson* (1921) 27 N.M. 112 [196 P. 513, 514].)

(1955) 45 Cal.2d 1, 6 [285 P.2d 897]; *Chronicle Publishing Co.* v. *Superior Court* (1960) 54 Cal.2d 548, 565 [7 Cal.Rptr. 109, 354 P.2d 636]; *San Diego Professional Assn.* v. *Superior Court* (1962) 58 Cal.2d 194, 199 [23 Cal.Rptr. 384, 373 P. 2d 448]; *D. I. Chadbourne, Inc.* v. *Superior Court* (1964) 60 Cal.2d 723, 729 [36 Cal.Rptr. 468, 388 P.2d 700]), thereupon called Nowicki, the author of the report.

Nowicki testified in substance as follows: He was a right-of-way agent for the State Division of Highways and a public employee. He made an appraisal dated August 30, 1961, of the property subject of the condemnation proceedings. This appraisal was communicated to plaintiff's attorneys and was considered confidential.

The witness further testified that the purpose of the appraisal was as stated in the report: ''The appraisals contained herein have been prepared for departmental use only and for the sole purpose of carrying on negotiations with the owners thereof, and as a basis upon which offers of settlement may be made which are considered to be fair and equitable to both the owners and the Department. In the event of a trial involving any issue of value, damages (severance or consequential), or benefits, then each and every, all and singular, matter, fact or thing specified, set forth and referred to in these appraisals, shall be deemed to have been made solely by way of an offer of settlement of pending litigation, and not otherwise.''[2]

Nowicki stated that he made the report to one Daniels, the Metropolitan District right-of-way agent. Both Nowicki and Daniels signed the report. Eventually the report was disapproved.

On cross-examination Nowicki testified that in the process of appraising the property he talked with Armstrong, defendant's president, and that his final valuation of the property was ''affected'' by such conversations.

During the ensuing colloquy between court and counsel

---

[2]Nowicki testified merely that the purpose of the appraisal was stated therein. At this point plaintiff's counsel again offered the pertinent portion of the report ''to the Court for its consideration'' whereupon defendant's counsel objected to the procedure and contended that the disclosure of any part of the appraisal would effectuate a waiver of the privilege. Plaintiff's counsel, stating that ''[i]n the light of the defendants' objection and the Court's refusal to inspect the report itself, despite request by counsel, I have no alternative but to read from the portion of the report itself which I deem not to be any waiver of the assertion of privilege,'' over defendant's objection, read the above quoted excerpt of the report.

it was brought to the attention of the trial judge that the valuation arrived at by Nowicki was disclosed to defendant by one Schlarmann, a negotiator for the state. Counsel for defendant then stated to the court that ''we would offer to prove that Mr. Schlarmann said, 'I think the property is worth over $120,000, plus whatever severance is accrued to the property.' We would offer to prove that this is his statement, and we are willing to show that he had in effect in his own method appraised the property, by his words, himself.'' It was plaintiff's position that such evidence was inadmissible for the reason that Schlarmann's statements were an integral and inseparable part of offers in compromise. The court thereupon suggested that defendant introduce further foundational testimony relevant to the evidence sought to be introduced.

In these proceedings still outside the jury's presence, defendant then called Armstrong, the president of defendant corporation. Mr. Armstrong testified on direct examination that he discussed the value of the property with Schlarmann on about three occasions in the latter part of 1961. It was stipulated that the latter was the right-of-way agent of the State Division of Highways negotiating the acquisition of the subject property. Armstrong stated that in December 1961 there was a meeting in the office of defendant's counsel Mr. Robinson, which was attended by Armstrong, Mr. Robinson, Schlarmann and another representative of the Division of Highways. The meeting lasted about three hours during which ''[w]e discussed values, appraisals, everything . . . [and] Mr. Schlarmann said his value of the property as it existed at that time was $120,000.'' Armstrong further testified that at this meeting Schlarmann also stated that the state appraisal was close to $96,000 and at a previous meeting said that the state appraisal was $95,000 to $96,000. On cross-examination Armstrong, when asked if the conversations testified to were had in an effort to compromise the instant lawsuit, responded: ''No compromise. We were discussing values, appraisals.''

Mr. Robinson, defendant's counsel, testified in substance as follows: During a conference at his office on December 27, 1961, attended by Schlarmann, another state highway representative, Armstrong and the witness, ''Mr. Schlarmann said that the State of California right-of-way appraisal was approximately or in the neighborhood of $95,000 to $96,000.''

According to the witness, Schlarmann also said that he had previously been in the appraisal section of the right-of-way department and that the state appraisal of the property was "[a]ll wet."[3]

■ It developed during cross-examination of Mr. Robinson that Schlarmann had subsequently left the employ of the state and that counsel for defendant had taken his deposition. A copy of the deposition was thereupon submitted to the court. In its reply brief and at oral argument before us defendant contended that the trial court was precluded from considering Schlarmann's deposition because it was never actually introduced in evidence. The point is utterly devoid of merit. We have carefully examined the record which discloses that defendant's counsel declared he had no objection to the use of the deposition and its consideration by the judge. Indeed defendant's counsel furnished the judge with his copy of the deposition and upon the subsequent announcement by the court of its rulings based *inter alia* on the deposition not only failed to interpose an objection but even stated that he had no objection to it being part of the record. It is abundantly clear to us that defendant's counsel waived any defect there may have been in the procedure relevant to the deposition. (*Seale* v. *Carr* (1909) 155 Cal. 577, 578 [102 P. 262]; *Grunsky* v. *Field* (1905) 1 Cal.App. 623, 626 [82 P. 979].)

In his deposition taken on July 3, 1962, Schlarmann testified as follows: He was and for about four years had been a right-of-way agent for the Division of Highways. While he had done both appraising and negotiating for the state, during all times here pertinent he was acting as a negotiator. He never at any time made an appraisal of the subject property. At first he dealt with Armstrong alone who, presumably then acting without counsel, made certain demands for settlement. Thereafter he had a meeting with both Armstrong and Robinson. He did not recall "whether or not we got into any discussion of settlement or anything like that at

---

[3]Mr. Robinson testified: "He further indicated that this was a very interesting appraising problem, that he had never run into anything quite like it, and that he had previously been in the appraisal section of the Right-of-Way Department with the State of California and hoped to make a career of some sort of appraising, so that he had done some appraising on the property of his own, and that, I think his expression was, the State appraisal was—quote—'All wet'—end quote—and indicated it was considerably lower than his opinion of the value of the property."

the first meeting'' but ''we were trying to arrive at a compromise settlement here and I did discuss generally with Mr. Robinson appraisal theory on properties of this type.'' At the next meeting on December 27, 1961, Schlarmann endeavored to reach a solution with Armstrong and Robinson which he could recommend to the state.[4] In the ensuing conversations the parties sought to utilize certain approaches to value discussed by the witness with Robinson and ''for the sake of discussions'' to accept certain lot values and development cost proposed by Armstrong.[5] ''I mean we all know that nobody is going to take a subdivision and sell all the lots in one day. I mean this thing, we were merely trying to work out a compromise. None of us ever said that this was market value or anything else. We were just trying to find something that was agreeable to everybody concerned.'' The parties to the conference never came up with a definite figure but ''with a figure which represented a range.'' Schlarmann was merely trying to arrive at a settlement ''to get him the best deal I could'' although this was not necessarily what Armstrong was entitled to.[6] His estimates and valuation approaches were discussed only for the purpose of compromising the matter. He had no authorization from his superiors to make an offer in any amount whatsoever and made clear to the other parties that even if they reached an agreement he had no assurance that it would be accepted by the appraisal department. In order to work out a compromise, he gave Armstrong ''the benefit of the doubt just all the way

---

[4]Schlarmann testified: ''All I wanted to do was just talk to them and see if we could work out something that we both felt was reasonable and if we arrived at a solution like that, then I would go back, if we all felt it was reasonable, would go back and recommend this to the Division of Highways. Now, it was understood at the time that even if we came to an agreement, that it was not binding upon the state because I had no advance authorization, you know, to reach an agreement with them. I mean we never came to an agreement. Mr. Robinson and I did at one time, but Mr. Armstrong wouldn't go along with it.''

[5]Schlarmann testified: ''We agreed to accept Mr. Armstrong's development costs. . . . We did not agree with Mr. Armstrong's figures but we accepted his figures for the sake of discussions. We accepted everything else Mr. Armstrong wanted just for the sake of discussions but it was clearly understood we were merely trying to reach a compromise. I mean we were just bending way over, I mean trying to reach out and get him out of this situation that he felt he was in.''

[6]Schlarmann testified: ''[W]hat I am trying to emphasize here is that the settlement that we were discussing with Mr. Robinson and Mr. Armstrong did not in my opinion represent fair market value. I think we were considerably in excess of that.''

down the line'' but ''we never once said that this represented fair market value or this was what the state should pay.''

At the conclusion of these proceedings outside of the jury's presence the court ruled (1) that defendant was entitled to call Nowicki as a witness and elicit from him his opinion as to value; (2) that Nowicki's appraisal report was not admissible because, having been made for the sole purpose of preparing for litigation, it was privileged; and (3) that the statements allegedly made by Schlarmann both as to the amount of the state's appraisal and as to his own opinion of value were not admissible since Schlarmann's proposals were tentative and any statements in connection therewith ''were made 'to buy peace in contemplation of mutual concessions.' ''

Subsequently in the jury's presence defendant called Nowicki pursuant to Code of Civil Procedure section 2055. He testified as follows: He was a right-of-way agent for the Division of Highways. During July and August 1961 he worked in the appraisal department and made an appraisal of the subject property.[7] The purpose of the appraisal was to furnish the negotiating right-of-way agent with the best possible estimate of market value. In making his appraisal he looked at the property, attempted to study the area, looked for comparable information, talked to Armstrong, talked to various realtors in the area and, based on the assembled information, prepared his appraisal report. The fair market value of the property as set forth in the report was $95,950. He never showed the report to, or discussed it with, Mr. Armstrong.

*The Nowicki report.*

It is clear that the trial court excluded Nowicki's appraisal report on the ground that it was made for the sole purpose of preparing for litigation and was therefore protected under the attorney-client privilege.[8] On this appeal the contradictory

[7]It will be recalled that Nowicki's appraisal report was dated August 30, 1961.

[8]This appears from the court's remarks as a whole although the privilege is not identified in the final ruling. There the court said: ''However, under the Suezaki case my conclusion is that Nowicki's report is not admissible, it is privileged. I find it to have been made for the sole purpose of preparing for litigation, and I am impelled to the conclusion that the report is not admissible.'' The reference is to *Suezaki* v. *Superior Court* (1962, *infra*) 58 Cal.2d 166 [23 Cal.Rptr. 368, 373 P.2d 432, 95 A.L.R.2d 1073] which involved the attorney-client privilege but not the public-official privilege.

positions of the parties are as follows: defendant contends that the report was not rendered inadmissible either by the attorney-client privilege or by the public-official privilege; plaintiff contends that it was protected from disclosure by both.[9] Both parties with an unabated eclecticism draw support for their respective positions from the same cluster of recent Supreme Court decisions. All in all, defendant, in urging disclosure, relies strongly on *Oceanside Union School Dist.* v. *Superior Court* (1962) 58 Cal.2d 180 [23 Cal.Rptr. 375, 373 P.2d 439] and *San Diego Professional Assn.* v. *Superior Court, supra,* 58 Cal.2d 194. Plaintiff in urging privilege relies principally on *Holm* v. *Superior Court* (1954) 42 Cal.2d 500 [267 P.2d 1025, 268 P.2d 722]. Each makes convenient, but not identical, reference to the basic principles formulated by Justice Peters in *D. I. Chadbourne, Inc.* v. *Superior Court, supra,* 60 Cal.2d 723, 736-738. In the main, defendant makes a bifurcated attack on the trial court's ruling, contending (a) that the Nowicki report was not made for the purpose of preparing for litigation and (b) it was not intended to be confidential.

Before we discuss the cases on which the present issue turns, it will be helpful to advert to a few basic principles. ■ The general principle of the attorney-client privilege expressed in terms of its essential elements, has been articulated by Wigmore thusly: ''(1) Where legal advice of any kind is sought (2) from a professional legal adviser in his capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are at his instance permanently protected (7) from disclosure by himself or by the legal adviser, (8) except the protection be waived.'' (8 Wigmore on Evidence (McNaughton Rev. 1961) § 2292, p. 554.) ■ This privilege is grounded on a policy which, according to its modern concept, declares that ''[i]n order to promote freedom of consultation of legal advisers by clients, the apprehension of compelled disclosure by the legal advisers must be removed; hence the law must prohibit such disclosure except on the client's consent.'' (8 Wigmore, *op. cit.,* § 2291, p. 545.) ■ It is ''strictly construed, since it suppresses relevant facts that may be necessary for a just

[9]In addition plaintiff claims (a) that the report was in effect an offer in compromise and excludable as such, and (b) that no prejudice resulted from the court's ruling since Nowicki testified to the valuation which he made in the report.

decision. [Citations.] It cannot be invoked unless the client intended the communication to be confidential [citations]; . . ." (*City & County of San Francisco* v. *Superior Court* (1951) 37 Cal.2d 227, 234-235 [231 P.2d 26, 25 A.L.R.2d 1418].) It is settled that "[t]he privilege embraces not only oral or written statements but actions, signs, or other means of communicating information by a client to his attorney. [Citations.]" (*City & County of San Francisco* v. *Superior Court, supra,* at p. 235.) "Where the document is itself the client's written communication, *coming into existence merely as a communication to the attorney,* . . . [the] communication itself is not to be produced, . . ." (8 Wigmore, *op. cit.,* § 2307, p. 594.) Finally, although the last principle is clear in itself its application is frequently difficult where the actual maker of the document is some person other than the client himself or is a person purporting to act for a corporation or other artificial person or body. (8 Wigmore, *op. cit.,* § 2307, p. 595.)

We have such an application in the instant case, our task being to determine the extent of the privilege where the client is the state. In reality the problem is the same where the client is a body politic as where the client is a corporation. (*Suezaki* v. *Superior Court* (1962) 58 Cal.2d 166, 174 [23 Cal.Rptr. 368, 373 P.2d 432, 95 A.L.R.2d 1073].) It is from this point of view that we proceed to survey the pertinent cases.[10]

In *Holm* v. *Superior Court, supra,* 42 Cal.2d 500 the court concluded that a written report made to the city by an

---

[10]The present action was instituted by "THE PEOPLE OF THE STATE OF CALIFORNIA, acting by and through the Department of Public Works" which department was alleged in the complaint and not denied in the answer to be vested with authority to exercise the particular power of eminent domain here invoked. Precisely speaking, the sovereignty of the state is in the people (Gov. Code § 100) who as a political body consist of citizens who are electors as well as citizens not electors (Gov. Code § 240), the "People of the State" and "The State" being descriptive of the same sovereignty. (*Tevis* v. *Randall* (1856) 6 Cal. 632, 635 [65 Am.Dec. 547].) Nevertheless, as a practical matter, the power of the state, distributed among its coordinate branches of government is exercised by its officers, agents and employees therein, as authorized by law. In considering the present problem of privilege, therefore, we apprehend no real distinction between the body politic of the state, the corporate body politic of a city and county (cf. *Holm* v. *Superior Court, supra,* 42 Cal.2d 500) or the corporate form of school district in carrying out the educational powers of the state (cf. *Oceanside Union School Dist.* v. *Superior Court, supra,* 58 Cal.2d 180). If we may generalize, the concept in all instances is corporate. Nor do the parties before us raise any question on this point.

employee of the city's municipal railway setting forth his version of an accident, which report was delivered to the general claims agent of the railway and thereafter to the city attorney for information and aid in defending in any litigation arising out of the accident, was protected from disclosure in discovery proceedings by the attorney-client privilege. ■ The court said: "To make the communication privileged the dominant purpose must be for transmittal to an attorney 'in the course of professional employment.'" (Code Civ. Proc., § 1881, subd. 2; *City & County of San Francisco* v. *Superior Court, supra,* 37 Cal.2d 227, 235.)

■ "In any given situation it is necessary that a determination be made concerning the facts asserted as a basis for the privilege. This determination is for the trial court in the first instance. Where it is clear that the communication has but a single purpose, there is little difficulty in concluding that the privilege should be applied or withheld accordingly. ■ If it appears that the communication is to serve a dual purpose, one for transmittal to an attorney 'in the course of professional employment' and one not related to that purpose, the question presented to the trial court is as to which purpose predominates. The question then is whether the conclusion of the trial court on the facts is correct or has resulted in an abuse of discretion." (P. 507.)

However, as Justice Peters subsequently pointed out in *D. I. Chadbourne, Inc.* v. *Superior Court, supra,* 60 Cal.2d 723, 733, the court in *Holm* did not discuss whose dominant purpose was under scrutiny since the city's employee who prepared the report was also a defendant, represented by the same attorney, and in a position to assert that the privilege claimed was at least in part his own.

*Chadbourne, supra,* involved the question whether in a negligence action a written statement obtained by a representative of the defendant corporation's insurance carrier from the corporation's employee and delivered to the corporation's attorney was protected from disclosure as a matter of law by the attorney-client privilege. It was asserted in opposition to disclosure that the policy issued to the defendant corporation required the latter to furnish all information incidental to the defense of any claims, that the written statement in question had been taken as a part of the investigation and preparation for defense, and that such statement was made for the purpose of being transmitted to, and was transmitted

to, the attorneys. Makuszi, the employee furnishing the written statement, had performed work on the sidewalk on which plaintiff allegedly fell and was injured. He was not named as a defendant in the action and no attempt was made to show he was responsible for the accident. Nor was any attempt made to show that the statement contained information not available to a nonemployee witness, that the statement emanated from Makuszi as a spokesman for the corporation, or that the client from whom the communication emanated intended that the statement be transmitted to its attorney, in confidence or otherwise. In upholding the trial court's order allowing inspection and copying of the statement, the Supreme Court held that the facts presented to the trial court could not be said to "determine the question of privilege, *one way or the other, as a matter of law. . . .* [T]he trial judge was under a duty to make several factual determinations. He found that . . . Makuszi's statement was not subject to the claimed privilege. . . . The evidence presented to him [the trial judge] was certainly inconclusive, and subject to contrary inferences. In such a situation we may not disturb his conclusion. . . ." (Italics added; 60 Cal.2d at p. 739.)[11]

In view of the denial of privilege to the written witness statement there involved, *Chadbourne* may not be helpful for the purpose of applying its own end result to the Nowicki report here but, in its attempt to answer many questions on the subject of privilege theretofore "unanswered by any California decision" (60 Cal.2d at p. 735), *Chadbourne* does state a number of principles which, we think, are applicable to and determinative of the instant problem. ▊ Its basic philosophy is that "the public policy behind the attorney-client privilege requires that an artificial person be given equal opportunity with a natural person to communicate with its attorney, within the professional relationship, without fear that its communication will be made public. . . . But reason dictates that the corporation not be given greater privileges than are enjoyed by a natural person merely because it must utilize a person in order to speak." (P. 736.) Giving full expression to this philosophy and adapting the rules of privi-

[11]The court also observed: "We do not know whether that determination was made on the basis that the statement was not given with the intent that it be transmitted to the attorney in confidence, or whether it was made on the basis that Makuszi was not speaking for the corporation when he gave his statement. These, and many other prerequisite facts were left in doubt by the showing made." (60 Cal.2d at p. 739.)

lege applicable to natural persons so as "to fit the corporate concept," Justice Peters set forth *inter alia* the following basic principles:[12]

"2. When . . . an employee [of a defendant corporation] is not a codefendant (or person who may be charged with liability), his communication should not be . . . privileged unless, under all of the circumstances of the case, he is the natural person to be speaking for the corporation; that is to say, that the privilege will not attach in such case unless the communication constitutes information which emanates from the corporation (as distinct from the nonlitigant employee), and the communicating employee is such a person who would ordinarily be utilized for communication to the corporation's attorney; . . .

"4. Where the employee's connection with the matter grows out of his employment to the extent that his report or statement is required in the ordinary course of the corporation's business, the employee is no longer an independent witness, and his statement or report is that of the employer;

"5. If, in the case of the employee last mentioned, the employer requires . . . that the employee make a report, the privilege of that report is to be determined by the employer's purpose in requiring the same; that is to say, if the employer directs the making of the report for confidential transmittal to its attorney, the communication may be privileged;

"6. When the corporate employer has more than one purpose in directing such an employee to make such report or statement, the dominant purpose will control, unless the secondary use is such that confidentiality has been waived;[13]

"7. If otherwise privileged under the rules stated

---

[12]We retain the original numbering.

[13]On this aspect of the subject the court remarked: "[I]f we are to assume that the employee is not free to make or refuse a statement, but *is required by the corporate employer to speak,* then the *employee's frame of mind ceases to be of great importance.* In such a situation the corporation may be the client who desires to communicate *its* (original italics) knowledge to *its* (original italics) attorney, without fear that others may be informed. In such case, *its basic reason* for requiring the statement (including, but *not confined to,* the 'dominant purpose') must be inquired into. In no event should the undisclosed dominant purpose of the person who obtains the employee's statement, standing alone, control the issue of privilege." (Italics added; 60 Cal.2d at p. 734.)

above, a communication does not lose its privilege merely because it was obtained, with the knowledge and consent of the employer, by an agent of the employer acting under such agency; . . .'' (60 Cal.2d 723, 736-737; in accord: *Wilson* v. *Superior Court* (1964) 226 Cal.App.2d 715, 723 [38 Cal. Rptr. 255].)

We apply these principles to the facts of the case before us. The evidence relevant to the nature of Nowicki's duties and to the purpose of his report consists principally of Nowicki's testimony and the portion of the report read into the record by plaintiff's counsel. We are not presented with a situation where the employee (Nowicki) is a codefendant or a person chargeable with liability. Nor is Nowicki's *personal* frame of mind of significance (see fn. 13, *ante*) since it is reasonably inferable from the evidence that he was required by the State Division of Highways to make the appraisal and prepare the report in the ordinary course of his duties and did so as the ''speaking agent'' of the division and therefore of the plaintiff.[14] The report was therefore that of said division.

What therefore was the purpose of the division in requiring the report? From the evidence summarized by us above it appears that the report was prepared for the purpose of carrying on negotiations with the owners of property sought to be acquired by eminent domain and as a basis for making offers of settlement to such owners. As we have pointed out, the trial judge concluded that this meant for the purpose of preparing for litigation. We think that he was warranted in arriving at this conclusion. The report was transmitted to the state's attorneys although the record does not disclose when or how. Nevertheless it is a reasonable inference that this was done so that they could be consulted on the matter of acquiring defendant's property and to that end of instituting legal action should that be necessary. In this sense the report was in preparation for litigation. It was nonetheless so because the litigation had not yet commenced; it was sufficient that it was contemplated. (Cf. *Holm* v. *Superior Court, supra,* 42 Cal.2d 500.) Indeed it seems to us that, as in litigation generally, such a report by evaluating the claim of the ''money demanding party'' (here the

[14]Hereafter we will refer only to the State Division of Highways and not labor the relationship between said division and the technical plaintiff herein.

owner) would be indispensable to the legal adviser in forming his own opinion as to whether litigation was desirable.

We are therefore not impressed with defendant's argument that according to the record the Nowicki report was prepared for "negotiation" and "would have been prepared, whether or not legal action were instituted." Defendant contends somewhat obliquely in its briefs but urged more pointedly at oral argument that the report, therefore, was not prepared for litigation. Defendant's argument seems to be that "negotiation" and "preparation for litigation" are two different things. Of course in terms of this case, negotiation means the amicable arrangement for the acquisition of the desired property. "Negotiate" according to Webster's Third New International Dictionary (1961) means "to communicate or confer with another so as to arrive at the settlement of some matter: meet with another so as to arrive through discussion at some kind of agreement or compromise about something: come to terms. . . ." (See also *Mason* v. *Mazel* (1947) 82 Cal.App.2d 769, 772 [187 P.2d 98].) As plaintiff correctly points out, the eminent domain process is not a segmented one but a continuous and integrated activity directed to the end of acquiring the necessary property and, it is reasonable to conclude, requiring legal advice at all stages so as to coordinate all phases of the activity to the attainment of such end.

 Nor do we find merit in defendant's claim that Nowicki's report was not made to the state's attorneys but to Daniels, the Metropolitan District right-of-way agent. As previously noted, Daniels also signed the report and it was transmitted to the attorneys. We find nothing in these circumstances which precludes the inference that the report was prepared for transmission to the attorneys (cf. *Holm* v. *Superior Court, supra,* 42 Cal.2d 500, where the fact that the report of the city's employee was first delivered to the city's claims agent and thereafter to the city attorney did not preclude a similar inference).

Defendant insists that, irrespective of the purpose for which the Nowicki report was prepared, it was not privileged because it was not confidential. To support this argument defendant relies upon *Oceanside Union School Dist.* v. *Superior Court, supra,* 58 Cal.2d 180 and *San Diego Professional Assn.* v. *Superior Court, supra,* 58 Cal.2d 194.

 In *Oceanside* it was held that the opinions as to market

value and severance damages of plaintiff school district's independent appraisers in an eminent domain proceeding were not protected by the attorney-client privilege because the information that the experts were hired to assess and upon which they made written reports, did not emanate from the client but from his adversary and the "report cannot be said to be a 'communication' from client to attorney as that phrase is used in the statute creating privilege. Logically, it cannot be held that material (including factual data and opinion) is privileged merely because it is the result of an expert's mental calculations, and was delivered to the attorney in confidence, in cases where the information on which it is predicated cannot be shown to have emanated from that attorney's client." (58 Cal.2d at p. 188.) It is to be noted that in *Oceanside* no attempt was made to reach by discovery the *written report* of the appraisers. The court laid emphasis on "the obvious distinction between reaching facts known to the expert by interrogation of him, as a witness, and reaching the same facts by recourse to his supposedly confidential report . . . [which] distinction is based on the source of the expert's information, rather than on any intent or lack of intent to make the communication confidential." (58 Cal.2d 180, 189, citing *People* ex rel. *Dept. of Public Works* v. *Donovan* (1962) 57 Cal.2d 346, 354 [19 Cal.Rptr. 473, 389 P.2d 1].)

In *San Diego Professional Assn.*, a discovery proceeding arising out of a cross-complaint against a firm of architects for malpractice and breach of contract, it was held that a written report of a firm of engineers retained by the attorneys for the cross-complainant to make a study of all the documents involved in the deficiencies alleged in the cross-complaint and to analyze the same with reference to portions of the building alleged to have been improperly designed or constructed, which report was delivered to said attorneys by said engineers, was not protected by the attorney-client privilege since the documents examined were not private to the client but were equally available to both parties and the report therefore did not involve matters emanating from the client so as to constitute a "communication" from the client to the attorney within the scope of the privilege. The court said: "Of major importance, neither the client's body, mind, nor private and confidential papers were submitted to the engineers for examination and report. They were handed the 'contract documents.' In other words, their primary duty was not to examine and assess the client's building, but to evaluate

and report any errors found in certain architectural designs, building specifications and contracts, all of which were part of the documents which constituted the contract between the parties to the lawsuit. Such documents were not private to the client, but were equally available to both parties, both before and during the pendency of the action." (58 Cal.2d at p. 201.)

It must be noted therefore that the report was unprivileged because the trial court found on substantial evidence that it was *not* a communication from the client to the attorneys but from a third person to the attorneys, the information contained therein in no way emanating from the client. "Whether the facts of an individual case support a conclusion that an expert's report did or did not emanate from the client *as a confidential communication to his attorney*, is a question for the trial court in the first instance." (58 Cal.2d at p. 202.)

Defendant argues that both *Oceanside* and *San Diego Professional Assn.* are applicable to the instant case; that on the basis of certain language appearing in *Oceanside*,[15] the question of privilege here is essentially the same as in that case; that Nowicki's testimony shows that he not only conferred with Armstrong, defendant's president, but that his opinion as to value was affected by that conversation; and that Nowicki's report actually emanated from *defendant*.

We find no merit in the foregoing argument because both *Oceanside* and *San Diego Professional Assn.* are distinguishable on their facts from the case before us. In each of the above two cases the communication sought to be protected from disclosure was made by an *independent expert* and *not* by a *corporate employee*. The "dominant purpose" doctrine enunciated in *Holm* was therefore not applicable (*Suezaki* v. *Superior Court, supra*, 58 Cal.2d 166, 174-175; *Oceanside Union School Dist.* v. *Superior Court, supra*, 58 Cal.2d 180, 188) and the dominant purpose of the expert's report being already known, the only factual determination to be made

---

[15]In its opening brief defendant quotes the following: "The real estate appraiser who obtains his information by viewing the adversary's property, by recourse to public records of permitted land use, and from comparable sales, is not transmitting a client's 'confidence.' If the expert is not transmitting the client's confidences, his communication cannot be protected by the provisions of a statute the sole purpose of which is to encourage a client to make full disclosure to his attorney without fear that others may be informed." (58 Cal.2d 180, 189.)

was whether the independent expert was transmitting a communication *from the client to the attorney.* (*Oceanside Union School Dist.* v. *Superior Court, supra,* 58 Cal.2d 180, 188; *San Diego Professional Assn.* v. *Superior Court, supra,* 58 Cal.2d 194, 202.) In each of the two cases, it was determined that under the particular circumstances thereof, the independent expert was not transmitting a confidential communication since the information contained therein did not emanate from the client and the fact that such information was reduced to writing did not of itself make the communication confidential.

In the case before us, on the contrary, the report was made by the client's employee, the "dominant purpose" doctrine *was* applicable and the trial court impliedly found that the employee, Nowicki, was required to make the report and did so as the speaking agent of the plaintiff. He therefore "stood in the shoes" of his employer (*Suezaki* v. *Superior Court, supra,* 58 Cal.2d 166, 174) and the communication transmitted to the attorney was the *client's communication.* In the instant case therefore the basic reason of the plaintiff for requiring Nowicki to prepare the appraisal report in dispute, including the "dominant purpose" of such report, was to enable the State Division of Highways (i.e., plaintiff) to communicate *its* knowledge to *its* attorneys to enable the latter to prepare for litigation. (*D. I. Chadbourne, Inc.* v. *Superior Court, supra,* 60 Cal.2d 723, 734; see fn. 13, *ante*; *Suezaki* v. *Superior Court, supra,* 58 Cal.2d 166, 174.) This knowledge, including the client's opinions, views, appraisals and other mental impressions formulated for it by Nowicki in connection with the property, emanated *from the client.*

In summary, in the case at bench, the trial court by ruling that the Nowicki report was privileged because it was made for the purpose of preparing for litigation, impliedly made all the requisite factual determinations: that Nowicki was required to make the report, that he did so as the "speaking agent" of plaintiff, that the basic reason, including the dominant purpose of Nowicki's employer in requiring the preparation of the report, was to transmit knowledge and information emanating from said plaintiff itself to its attorneys in order to enable them to prepare for litigation. We are satisfied that these factual determinations are supported by the record. The trial court was therefore warranted in concluding that the report was privileged. It is not within our province to disturb such conclusion.

*Safeway Stores, Inc.* v. *Superior Court* (1961) 193 Cal. App.2d 270 [14 Cal.Rptr. 243] and *Jorgensen* v. *Superior Court* (1958) 163 Cal.App.2d 513 [329 P.2d 550] cited by defendant are of no help to it here. In *Safeway Stores* this court held that the party invoking privilege had not established that the dominant purpose of the accident report there involved was for transmission to the corporate employer's attorneys; in *Jorgensen* it was held that a report by *defendant's* doctor of a medical examination of the plaintiff was not within the attorney-client privilege since in contrast to *City & County of San Francisco* v. *Superior Court, supra,* 37 Cal.2d 227, plaintiff was not communicating to the agent (doctor) of his own attorney so that there was no confidential communication by the client to his attorney.

In view of the conclusion we have reached on this issue, it is unnecessary for us to consider whether the trial court's ruling may also be upheld on any of the additional grounds proposed by plaintiff.

*Schlarmann's statements.*

As previously stated, the trial court excluded certain statements made by plaintiff's right-of-way agent Schlarmann on the ground that they were made "to buy peace in contemplation of mutual concessions," thus ruling in effect that they were inadmissible as an integral part of an offer in compromise. It will be recalled that the statements in issue were in substance as follows: that the state appraisal was close to $95,600; that the state appraisal was "all wet"; and that his, Schlarmann's, appraisal of the property was in the sum of $120,000. Defendant contends that Schlarmann's statements "as testified to by Mr. Armstrong and Mr. Robinson" should have been received in evidence as admissions independent of any offer in compromise.

Both parties rely on *People* ex rel. *Dept. of Public Works* v. *Forster* (1962) 58 Cal.2d 257 [23 Cal.Rptr. 582, 373 P.2d 630]. In that case, after referring to the general rule that offers of compromise are not admissible in evidence as such, the court, quoting from *Rose* v. *Rose* (1896) 112 Cal. 341, 344 [44 P. 658], set forth the further rule that "the declaration [in an offer of compromise] of facts involved in the controversy which are not mere concessions made for the purpose of such offer, but are statements of independent facts, are admissible against the party making them." (58 Cal.2d at p. 263.) The court also quoted from certain sections

of Wigmore on Evidence in which that authority states *inter alia* "that a *concession which is hypothetical or conditional only can never be interpreted as an assertion* representing the party's actual belief, and therefore cannot be an admission" (4 Wigmore on Evidence (3d ed.) p. 26); and that "it is apparent that the *occasion of the utterance* is not decisive; . . . What is important is the *form* of the statement, whether it is *explicit* and *absolute*. If, making all implications from the *context and the circumstances* [italics added], the statement assumes the adversary's claims to be well-grounded for the mere purpose of discussing a settlement which will avoid litigation, and expresses nothing as to the terms of the specific claim, it is not an admission. . . ." (4 Wigmore, *op. cit.*, p. 29; 58 Cal.2d at p. 264.) Additionally and in support of its statement that the "intention of the party is the crucial point," the court quoted from 31 Corpus Juris Secundum, section 285, pages 1042-1043, wherein among other things it is stated that " [i]f the proposal is tentative, and any statements made in connection with it hypothetical, if the offer was made to 'buy peace' and in contemplation of mutual concessions, it is as to such point a mere offer of compromise." (58 Cal.2d at p. 265.)

Applying these principles the court in *Forster* upheld the *admission* in evidence of a letter of the plaintiff condemner's right-of-way agent offering a specified sum for the defendant's land and for damages on the ground that the statements of value contained therein were "in no sense tentative or hypothetical . . .[but] plainly constituted positive declarations of fact. . . ." (58 Cal.2d at p. 266.)

As in *Forster* the parties to this appeal are in agreement as to the governing rule but diverge in its application. It must also be noted that, like the trial court in *Forster,* the trial court in the instant case, upon defendant's offer to introduce the evidence and plaintiff's objection, heard testimony outside the presence of the jury before ruling on the matter. This was the proper procedure since it was for the trial judge to determine the question of .the admissibility of the evidence and any preliminary questions of fact upon which the admissibility of the evidence depended. (9 Wigmore on Evidence (3d ed.) § 2550, p. 501; McCormick on Evidence, pp. 122-123; Witkin, Cal.Evidence, p. 620; *People* ex rel. *Dept. of Public Works* v. *Forster, supra,* 58 Cal.2d 257, 260; Code Civ. Proc. § 2102.) The determination of any such preliminary

questions of fact on conflicting evidence is, like the trial court's determination of any other factual issue, conclusive on appeal. (See *Overton* v. *Vita-Food Corp.* (1949) 94 Cal. App.2d 367, 370 [210 P.2d 757].)

We have at the beginning of this opinion set forth in detail the evidence received by the trial court relevant to the question of the admissibility of Schlarmann's statements. As we there made clear, this evidence included the deposition of Schlarmann which was considered by the court in ruling on the question. Defendant's position therefore that we should review the court's ruling in the light of only the testimony of Mr. Armstrong and Mr. Robinson is erroneous. We must, as did the trial court, consider Schlarmann's deposition testimony as well. From our examination of all the pertinent evidence we are satisfied that the court's ruling is supported by the evidence; that although there is a conflict between the testimony of Mr. Armstrong and Mr. Robinson on the one hand and Mr. Schlarmann on the other, the trial court's resolution of this conflict is conclusive on appeal; and that, under the applicable legal principles stated above, the court properly excluded Schlarmann's statements.

The judgment is affirmed.

Molinari, J., and Bray, J.,* concurred.

Appellant's petition for a hearing by the Supreme Court was denied January 20, 1965.

---

*Retired Presiding Justice of the District Court of Appeal sitting under assignment by the Chairman of the Judicial Council.