[No. B021885. Second Dist., Div. Three. May 6, 1988.]

In re LARRY P. et al., Persons Coming Under the Juvenile Court Law.
LOS ANGELES COUNTY DEPARTMENT OF CHILDREN'S SERVICES, Petitioner and Respondent, v.
TAMALIA P., Objector and Appellant.

COUNSEL

Anthony R. Garcia, under appointment by the Court of Appeal, for Objector and Appellant.

De Witt W. Clinton, County Counsel, and Ronald J. Selgrath, Deputy County Counsel, for Petitioner and Respondent.

OPINION

**KLEIN, P. J.**—Objector and appellant Tamila or Tamalia P. (the mother) appeals from orders of the juvenile court.

The orders are affirmed, and because of the efforts made to locate the mother, it is unnecessary to address the constitutionality of notice by mail to the last known address when it is known such address is no longer valid.

FACTUAL & PROCEDURAL BACKGROUND[1]

On June 17, 1985, the Los Angeles County Department of Children's Services (DCS) filed a petition pursuant to Welfare and Institutions Code section 300, subdivisions (a) and (d),[2] to have Larry P. and Mary P., five-year-old twins, and Panapa P., age four, adjudged dependent children of the court. The petition alleged: the minors had no parent capable of exercising

---

[1] Due to gaps in the record on appeal, we take judicial notice of the superior court file. (Evid. Code, §§ 452, subd. (d), 459.)

[2] All subsequent statutory references are to the Welfare and Institutions Code, unless otherwise indicated.

proper control; the minors and their home were filthy; the mother had failed to register Larry and Mary in school; Mary had no shoes; the minors' father's whereabouts and interest/ability to parent were unknown; and the home was an unfit place by reason of the neglect of the parents.

At the July 26, 1985, hearing, at which the mother was present and represented by her appointed counsel, Anthony R. Garcia (Garcia), the petition was sustained, the minors were adjudged dependent children of the court pursuant to section 300, subdivision (a), and the trial court ordered suitable placement/foster care for the minors. Judicial review was set for January 23, 1986.

The DCS judicial review report, prepared December 12, 1985, indicated: the mother's whereabouts were unknown; at the initial home call of August 12, 1985, the mother stated she would have to vacate her Ramona Avenue apartment in Baldwin Park because she was behind in the rent; and that the building manager had seen the mother leave on September 21, 1985, with a man identified as her cousin. A due diligence report by the DCS, also dated December 12, 1985, stated a search for the mother had been initiated through the due diligence specialist, the results from that search to date were negative, and inquiry had been made of agencies for general relief and supplemental security income recipients.

Although the DCS was aware the mother no longer resided at the Ramona Avenue apartment, on January 3, 1986, it served her by mail at that address with notice of the judicial review set for January 23, 1986.

At the January 23, 1986, judicial review, at which the mother did not appear but was represented by Garcia, the trial court on its own motion continued the matter to March 18 and ordered the DCS to prepare a due diligence report on both parents.

On February 27, the DCS sent the mother notice of the upcoming hearing by mail at the Ramona Avenue address.

The mother failed to appear at the March 18 hearing, and at Garcia's request, the trial court continued the matter to May 7 for permanency planning for the minors. The trial court also authorized Garcia's request for funds to hire an investigator to attempt to locate the mother. Garcia never engaged an investigator.

At the May 7 hearing, the minors were continued as dependent children of the court pursuant to section 300, subdivision (a), and the county department of adoptions was ordered to provide permanent placement services.

On May 23, 1986, on the mother's behalf, Garcia filed notice of appeal from the trial court's decision to proceed to permanency planning and the orders made at the permanency planning hearing. The appeal was based on the assertion there was inadequate notice to the mother. Garcia also requested he be appointed as the indigent mother's counsel on appeal.

The mother again failed to appear at a June 30, 1986, hearing to ascertain whether she was indigent. The trial court held that due to the nonappearance, it was required to assume the parents had the financial ability to pay their own costs on appeal. All prior orders were to remain in full force and effect. The matter was then continued to November 5, 1986, for review of dependency status.

On August 29, 1986, a notice of appeal also was filed from the denial of indigency status in the June 30 order. The notice raised the issue of the "scope of notice to parties who are unavailable for further process of the court after an initial disposition hearing" and questioned the adequacy of notice to an address known to be invalid.

At a later indigency hearing on September 23, 1986, after reviewing the file, the trial court found the mother indigent and ordered the county to bear the cost of the appeal.

On December 4, 1986, the Court of Appeal appointed Garcia as counsel on appeal.

The obviously incomplete superior court file contains a DCS report filed December 9, 1987, which provides in relevant part: "WHEREABOUTS OF PARTIES: [¶] . . . . [¶] PARENTS: PARENTAL RIGHTS TERMINATED 3-30-87." The actual order is not contained in the file. Garcia, however, acknowledged at oral argument that parental rights have been terminated. No appeal was taken from the termination proceedings.

The mother has had no contact with the DCS since August 12, 1985, and her whereabouts remain unknown.[3]

CONTENTIONS

On behalf of the mother, Garcia contends: (1) section 366.2, subdivision (b), providing for notice of a judicial review to be mailed to the last known address of the person to be notified, is inadequate to satisfy due process

---

[3] Although there are two notices of appeal referring to separate orders of the trial court, there is one appeal number and one record, and we dispose here of all issues raised in the briefs.

under the United States and California Constitutions when it is known the address is no longer valid; and (2) section 366.25, subdivision (b), relating to notice of a permanency planning hearing, is defective for the same reasons.[4]

## DISCUSSION

### 1. *Appeal not moot.*

Preliminarily, the denial of indigency status was subsequently reconsidered and Garcia was appointed to represent the mother, eliminating that portion of the appeal.

At first blush it would appear the termination of parental rights on March 30, 1987, from which ruling no appeal was taken, renders the mother's constitutional claims moot. Even assuming her contentions were meritorious, in view of the termination of her parental rights, a reversal on appeal would have no practical effect.

■ However, we decline to dismiss the appeal on the ground of mootness. Because the mother's last known address has not been valid for some time and she has been unavailable throughout these proceedings, assuming arguendo the earlier notices were inadequate, the notice of the termination proceeding similarly would be infirm.

### 2. *Due process satisfied here.*

#### a. *General principles.*

■ "Since the interest of a parent in the companionship, care, custody, and management of [her] children is a compelling one, ranked among the most basic of civil rights [citations], the state, before depriving a parent of this interest, must afford [her] adequate notice and an opportunity to be heard." (*In re B. G.* (1974) 11 Cal.3d 679, 688-689 [114 Cal.Rptr. 444, 523 P.2d 244].)

*In re B. G.* recognized the probation department, faced with the task of notifying a parent whose address may be uncertain, may be called upon to

---

[4] Section 366.2, subdivision (b), pertaining to notice of status review hearings, provides in relevant part: "[N]otice . . . shall be mailed by the probation officer . . . , to the minor's parent or guardian, . . . , by certified mail addressed to the last known address . . . , or shall be personally served . . . ."

Section 366.25, subdivision (b), relating to notice of permanency planning hearings, reads in pertinent part: "Notice of the proceeding to conduct the review shall be mailed by the probation officer to the same persons as in an original proceeding, . . . by certified mail addressed to the last known address of the person to be notified, or shall be personally served . . . ."

use unconventional forms of notice and may not always succeed in apprising a party of her opportunity to appear. (*Id.,* at p. 689.) It drew its due process conclusions from *Mullane* v. *Central Hanover Tr. Co.* (1950) 339 U.S. 306, 314 [94 L.Ed. 865, 70 S.Ct. 652], wherein the United States Supreme Court stated: "An elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections. [Citations.] The notice must be of such nature as reasonably to convey the required information, [citation], and it must afford a reasonable time for those interested to make their appearance, [citations]."

We glean from the trial court's comments the concept of "due diligence" was developed as a requirement for going forward in this area in the mid-1970's by the courts and county counsel in response to the frequent problem of nonappearing parents who could not be served. It appears there was a perception that in this context, due process required something more than a pro forma notice by mail. If such self-imposed due diligence is the practice, in the instant case a greater effort was in fact expended.

> b. *Efforts made were reasonably calculated under the circumstances to apprise the mother.*

█ Counsel argues the notice provisions of sections 366.2 and 366.25 do not satisfy due process when the agency is aware the last known address of the person to be notified is no longer valid. Because the issue has not been thoroughly briefed, and for the additional reason that far more was done here than was required under the statutes, we do not address whether due process is satisfied by mere compliance with the notice by mail provisions.

As indicated, the statutes provide for mailed notice to the last known address, but the efforts here of the DCS and the trial court surpassed that easily satisfied directive. As recounted above, the DCS performed a due diligence search for both parents, to no avail. A DCS report in the superior court file indicates, inter alia, the mother had not been employed since shortly after the birth of the twins, and the minors' father did not provide financial support. Further, Garcia acknowledges the mother has always been on some type of assistance. Accordingly, if the mother were capable of being located, welfare agency inquiries likely would have been successful.

In addition, the trial court did not acquiesce in the DCS's fruitless due diligence search, but authorized Garcia to hire an investigator to locate the mother. Also, the trial court did not hurry the matter along, but granted

repeated continuances during which time the search for the mother could persist.

If for whatever reason the mother's own attorney could not locate her and produce her in court, it is unclear what more could have been done in this case. Actual notice is not always required, nor should it be. The matter could not be continued indefinitely, as it is the minors' best interests which are paramount here. (*Collins* v. *Superior Court* (1977) 74 Cal.App.3d 47, 52 [141 Cal.Rptr. 273].)

3. *Trial court had continuing jurisdiction.*

 As indicated, for the reasons stated, we leave for another occasion the constitutionality of the notice by mail provision in a situation where it is known the most recent address is no longer valid. However, we observe the authorities relied on by counsel for the notice/due process argument speak to a court's *acquiring* of jurisdiction, not to *continuing* jurisdiction, and are therefore wholly inapposite. (See e.g. *In re B. G., supra,* 11 Cal.3d at pp. 688-689 [probation department made no effort to notify the mother in Czechoslovakia in the first instance]; *In re Antonio F.* (1978) 78 Cal.App.3d 440, 450 [144 Cal.Rptr. 466], disapproved on other grounds in *In re Laura F.* (1983) 33 Cal.3d 826, 831 [191 Cal.Rptr. 464, 662 P.2d 922] [no notice sent to mother's last known address in Pennsylvania].)

The mother was present at the July 26, 1985, disposition hearing when her children were ordered into foster care. Once jurisdiction of the subject matter and of the person is obtained in a particular action, that jurisdiction continues throughout the action and in proceedings incidental thereto. (2 Witkin, Cal. Procedure (3d ed. 1985) Jurisdiction, § 332, p. 750.) Code of Civil Procedure section 410.50 provides: "(a) Except as otherwise provided by statute, the court in which an action is pending has jurisdiction over a party from the time summons is served . . . . A general appearance by a party is equivalent to personal service of summons on such party. [¶] (b) Jurisdiction of the court over the parties and the subject matter of an action continues throughout subsequent proceedings in the action."

Counsel's due process argument overlooks the fact the mother had notice and was present at the outset of these proceedings, conferring continuing jurisdiction upon the trial court, and imposing upon the mother some burden to remain in contact thereafter.[5]

---

[5] At oral argument, Garcia conceded the trial court had jurisdiction over the mother.

### 4. *Mother's absence nonprejudicial.*

■ We recognize the weighty nature of the interest a parent has in a child. (*In re B. G., supra,* 11 Cal.3d at p. 688.) Nonetheless, because we perceive no due process violation and hold the trial court had jurisdiction, the question becomes at most whether the mother was in any way prejudiced by the lack of more strenuous efforts to locate her.

Had even greater diligence been exercised and had the mother been located and appeared in court, it is exceedingly unlikely the outcome would have been different in any way.

As indicated, the mother was in court on July 26, 1985, when her children were taken from her. Were she interested in regaining their custody, or physically or mentally able to do so, at a minimum, she would have maintained close contact with agency personnel. However, she has had no contact with the DCS since the initial visit on August 12, 1985, and has been continuously unavailable.

Counsel acknowledges the mother functions under mental limitations. When he visited her and the children while they were still in the apartment, the home was in disarray, the mother had little comprehension of his inquiries, and she would mimic, and would not vocalize or verbalize, any information to him.

This record reflects the mother is either disinterested in, and/or incapable of, filling the parental role, so that an appearance by her in the trial court would have been unavailing.[6]

Further, there is no contention the trial court abused its discretion in proceeding to permanency planning. The arguments on appeal are limited to the adequacy of the notice given. Counsel properly does not assert the mother's presence in court would have led to an outcome more favorable to her, as this record could not support such a claim.

### CONCLUSION

■ Counsel's attack on the constitutionality of the subject statutes disregards the fact far more was done here than mere compliance with the notice by mail provisions. The due diligence quest, as well as the authorizing by the trial court of an investigator, were reasonably calculated under

---

[6] We are also mindful that notwithstanding the mother's absence, her interests were represented by counsel.

the circumstances to locate the mother and apprise her of these proceedings. (*Mullane* v. *Central Hanover Tr. Co., supra,* 339 U.S. at pp. 314-315 [94 L.Ed. at pp. 873-874].)

 The due process challenge also overlooks the fact the mother made an initial appearance, the effect of which was to confer upon the trial court *continuing* jurisdiction.

Because the proceedings are not jurisdictionally infirm, the question becomes at most whether the mother was prejudiced by the lack of more zealous efforts to locate her. On this record, prejudice is nonexistent.

We leave unresolved whether notice to the last known address will suffice when it is known such address is no longer valid. However, it would appear a parent who has notice her children have come under the jurisdiction of the court, and who has any desire to continue in the parental role, would not only leave a forwarding address, but would also remain accessible, visible, and involved, for the duration of the proceedings.

### DISPOSITION

The orders are affirmed.

Danielson, J., and Arabian, J., concurred.