[No. B062519. Second Dist., Div. Five. Nov. 19, 1992.]

In re DORINDA A. et al., Persons Coming Under the Juvenile Court Law.
COUNTY OF LOS ANGELES DEPARTMENT OF CHILDREN'S
SERVICES, Plaintiff and Respondent, v.
LUIS A., Defendant and Appellant.

**COUNSEL**

Terry Sochat Schneider, under appointment by the Court of Appeal, for Defendant and Appellant.

De Witt W. Clinton, County Counsel, Jeanette Malouf, Tom Lyon, Jones, Day, Reavis & Pogue and Elwood Lui for Plaintiff and Respondent.

**OPINION**

**BOREN, J.**—In this dependency case, we conclude that substantial evidence supports the juvenile court's assertion of jurisdiction over the minor children, and its dispositional orders.

## FACTS

On March 29, 1991, respondent department of children's services (the Department) filed a petition seeking to have Dorinda and Edwin A. and their two siblings declared dependent children of the court pursuant to section 300 of the Welfare and Institutions Code.[1] The amended petition alleged that the minor children's natural father, appellant Luis A., sexually abused Dorinda; that the minors were exposed to violent confrontations between their parents; that appellant beat the children with a belt and broom, and kicked them, causing unreasonable pain and suffering; that their parents were not adequately providing for, supervising or protecting them; and that there was a substantial risk of continued abuse.

At the time, Dorinda was four years old and Edwin was two years old.

---

[1]Section 300 authorizes the juvenile court to exercise jurisdiction over a minor whose home is unfit by reason of the neglect, cruelty, sexual abuse or physical abuse of either of his or her parents or guardians. Once the court determines that the minor falls within its jurisdiction under section 300, it is authorized to limit the parent or guardian's control over the child. (Welf. & Inst. Code, § 361.)

Appellant was arrested on March 27, 1991, for committing a lewd act with a child under the age of 14, and the minor children were placed in the Department's custody.

In a report dated March 28, 1991, the Department's social worker reported that Dorinda was displaying sexualized behavior. Specifically, Dorinda had taken her mother's hand and placed it on Dorinda's vaginal area and breasts. When questioned by her mother, Dorinda stated that appellant did this to her. Dorinda told the caseworker and a police officer that appellant rubbed her "like this," and vigorously rubbed her genitals, reporting that this occurred in both the bedroom and the bathroom. Dorinda's 2 half sisters, ages 10 and 14, and a 16-year-old aunt all stated to the caseworker that appellant would take Dorinda into the bedroom or bathroom for 20 minutes when their mother was not at home. All three of them indicated that Dorinda had been grabbing their genitals and, when questioned, had said, "[T]hat's what papa does to me." Dorinda's mother had observed appellant lying on the bedroom floor with Dorinda.

The children were released to their mother's custody on April 1, 1991.

In a follow-up report dated May 7, 1991, the Department's social worker reiterated the facts contained in the original report, adding that appellant had in the past beaten the minors' mother with such force that she lost consciousness, and that the minors had witnessed the beatings. Also, when appellant would take Dorinda into the bedroom or bathroom, her sisters would see her crying on her way there. On one occasion, Dorinda asked a sister not to leave her alone in the bathroom because she was afraid appellant would come in and "go like this," at which time she rubbed her genitals. At the time of appellant's arrest on charges of child molestation, he was on probation for spousal abuse.

On May 9, 1991, the juvenile court ordered that the minors' mother retain custody, and that appellant's visits be monitored and occur in a neutral setting.

The hearing on the allegations in the amended petition took place on July 24 and in August of 1991. Dorinda's half sister Myra testified that she had seen appellant take Dorinda into the bedroom and close the door, and she had once seen them lying together under the covers. She also testified that Dorinda had touched her five times or so on her chest and vaginal area. Each time, Myra asked why she touched like this, and Dorinda replied that appellant did that to her. Myra indicated that appellant hit her in the head and kicked her in the buttocks while she was sleeping. Further, on many

occasions she witnessed appellant striking Dorinda with a belt that had "things sticking out of it," leaving ugly purple marks on Dorinda's back and buttocks, and had also witnessed appellant beating her mother into unconsciousness.

Dorinda's half sister Ruth likewise testified to having witnessed appellant's beatings of both Dorinda and her mother, and that appellant would take Dorinda into the bedroom when he came home from work.

In chambers, the attorneys attempted to qualify Dorinda to testify, but were unable to do so when she gave incorrect answers to simple questions. The court concluded that Dorinda was unqualified to testify as a witness. Appellant sought to strike Dorinda's statements from the Department's reports when she failed to qualify as a witness. The court overruled the motion on the grounds that Dorinda's nonverbal and verbal statements to the Department's social worker had sufficient indicia of reliability that there was no reason to believe they were lies or inherently untrustworthy.

Dorinda's mother testified that appellant hit her within sight of the children. The force of the blow caused her to see lights and become dizzy, and the children to scream in fear. Appellant hit her on other occasions, as well, and threatened to kill her. She was afraid of him. She also testified that starting seven months earlier, Dorinda began frequently touching her breasts, and once touched the rest of her body, including her vaginal area, which she found to be unusual behavior for her child.

The Department's caseworker testified that in response to his question to Dorinda whether her daddy had done anything to her, she said yes and spontaneously began to rub her chest and crotch. She also volunteered that this occurred in the bathroom and bedroom. The caseworker considered spontaneous (i.e., unprompted) responses to be more reliable than elicited responses.

The court asserted jurisdiction, and sustained the counts in the amended petition alleging sexual abuse, the occurrence of violent parental confrontations, use of excessive force and the mother's failure adequately to protect the minor children. The minors remained in the custody of their mother, and appellant was permitted to have brief monitored visits and was ordered to obtain counseling.

### DISCUSSION

Appellant contends that Dorinda's hearsay statements to her kin, the Department's caseworker and the police should have been excluded by the

trial court because Dorinda failed to qualify as a witness at the hearing on the allegations in the petition. He relies on the recent case of *In re Basilio T.* (1992) 4 Cal.App.4th 155 [5 Cal.Rptr. 450] in support of his contention.

In *Basilio T.*, a four-year-old and his six-year-old brother were removed from the custody of their parents, after allegedly viewing violent confrontations. At trial, the parents denied violence, though the social study report stated that the children, when interviewed the day after they were taken into protective custody, told of recurrent violent incidents between the parents. Basilio, the younger child, was found incompetent to testify at trial, and the older child, while competent, testified that he did not remember any fighting. The trial court denied a motion to exclude Basilio's statements, and ruled that it found the statements trustworthy, but would not consider them as proof of the matters they stated. (4 Cal.App.4th at pp. 161-163.)

The Court of Appeal for the Fourth District concluded that the trial court was required to disregard completely all Basilio's statements in the social study report once it determined Basilio lacked competency to qualify as a witness. The court reasoned that a child who lacks competency at trial because of his inability to distinguish between truth and falsehood should be deemed to have lacked competency at the time he uttered the statements to the social worker. (*Id.* at p. 167. See also *In re Heather H.* (1988) 200 Cal.App.3d 91, 96 [246 Cal.Rptr. 38]. But compare *In re Tasman B.* (1989) 210 Cal.App.3d 927, 932-933 [258 Cal.Rptr. 716] (Where the social study report contained the minor's hearsay statement "My daddy hurt me," the court concluded that this could be considered by the trial court because "[r]elevant hearsay evidence is . . . admissible at the disposition hearing. It is also admissible at the jurisdiction hearing.").)

There is authority for the proposition that a minor's out-of-court statements that a particular individual molested her are admissible not to prove he actually did, but as circumstantial evidence the child believed he did. In other words, these statements "supply circumstantial evidence she had a certain state of mind, that is, a belief her father had hurt her and a dislike and fear of him based on that belief. Whether the statement is true or not is irrelevant to this use of the statement. Thus it is nonhearsay for this purpose. It is well settled that out-of-court declarations can be used as circumstantial evidence of the declarant's own state of mind. ([1] Witkin, Cal. Evidence ([3d] ed. [1986]) §§ [593-595].) This includes a declaration someone harmed her offered as circumstantial evidence of the declarant's negative attitude toward the one she believes committed this wrong against her." (*In re Cheryl H.* (1984) 153 Cal.App.3d 1098, 1131 [200 Cal.Rptr. 789].)

■ As noted by the court in *Cheryl H.*, "The purpose of a dependency hearing is to determine the best interests of the child and to protect those

interests. [Welf. & Inst. Code] § 361; Civ. Code, § 4600; *Collins* v. *Superior Court* [1977] 74 Cal.App.3d 47, 52 [141 Cal.Rptr. 273].) A child's belief that her father harmed her and her fear of him is relevant evidence tending to prove it is not in the child's best interests to permit his continued contact with her." (*In re Cheryl H., supra*, 153 Cal.App.3d at p. 1132.) In this case, Dorinda verbally and nonverbally communicated her fear of appellant to her sisters, by telling them she was afraid appellant would molest her if she was left alone in the bathroom, and by crying as appellant led her into the bathroom and bedroom, where the molestations were alleged to have occurred. Dorinda's fear and dislike of appellant were relevant nonhearsay factors for the court to consider in determining the nature of appellant's future contacts with her.

■ Assuming, arguendo, that the juvenile court erred by denying appellant's motion to strike all Dorinda's statements from the social study reports, this did not constitute reversible error. ■ "When reviewing a judgment based in part on excludable evidence, we first strip away the inadmissible evidence and ask whether enough admissible evidence remains to sustain the court's finding." (*In re Daniel C.H.* (1990) 220 Cal.App.3d 814, 837 [269 Cal.Rptr. 624].) The order must be upheld if there is any substantial evidence, contradicted, or uncontradicted, to support the judgment. (*Ibid.*; *In re Amy M.* (1991) 232 Cal.App.3d 849, 859-860 [283 Cal. Rptr. 788]; *In re Jon N.* (1986) 179 Cal.App.3d 156, 158, fn. 1 [224 Cal.Rptr. 319].) ■ We conclude that even with Dorinda's statements stripped from the social study reports, sufficient evidence remains to uphold the juvenile court's judgment.

First, the testimony adduced at trial from Dorinda's sisters and mother established that Dorinda had for some months engaged in unusual sexualized behavior, such as grabbing and touching their breasts and genitals. "Evidence Code section 225 makes it clear a hearsay declarant's nonverbal conduct may qualify as a 'statement' for purposes of exclusion under the hearsay rule, but only if the conduct was *intended* by the hearsay declarant 'as a substitute for oral or written verbal expression.' " (*In re Cheryl H., supra*, 153 Cal.App.3d at pp. 1126-1127, italics in original.) A child placing anatomically correct dolls in sexual positions is not trying to use conduct for words to the effect that she has been molested. (*Id.* at p. 1127.) By the same token, Dorinda's spontaneous touching demonstrated her awareness of this type of sexual conduct, but was not an effort to use conduct to inform others that she had been molested. It is apt to note that Dorinda did not attempt to explain her behavior until pressed to do so.

Second, Dorinda's sisters testified that they saw appellant take Dorinda into the bedroom or bathroom and close the door at times when their mother

was not at home. Myra testified that she saw appellant lying under the covers with Dorinda on one such occasion. Given these witnesses' testimony regarding Dorinda's unhappy demeanor when closed into rooms with appellant, the trial court could infer that appellant was molesting Dorinda.

Third, there was abundant testimony from all the witnesses that appellant beat the minor children (including Dorinda) and their mother severely, both with objects and with his hands and feet. Moreover, appellant had threatened to kill his wife. The record strongly suggests that the witnesses were terrified of appellant.

In sum, the juvenile court's assertion of jurisdiction and its dispositional orders are supported by substantial evidence, and cannot be reversed on appeal.

### DISPOSITION

The judgment (order) is affirmed.

Turner, P. J., and Grignon, J., concurred.